MILLARD F. KNIGHT et ux., Respondents, v. DONNELLY BROTHERS, Appellants.

Kansas City Court of Appeals, May 25, 1908.

1. **NEGLIGENCE: Pleading: General Allegation: Motion to Make Specific.** Where the defendant fails to file a motion to make the averments of a petition sounding in negligence more definite and certain but answers to the merits, he cannot complain of the general character of the charge and is not entitled to a strict construction of the petition which should be construed liberally in favor of the plaintiff; and the particular negligence shown by the evidence is held to be within the scope of the negligence pleaded.

2. ———: **Blasting: Evidence.** The evidence relating to the method of charging and discharging a blast in a ledge of rock in the heart of a city is reviewed and held to show negligence on the part of the foreman in charge thereof.

3. ———: ———: **Master and Servant: Assumption of Risk.** A servant engaged in the extremely hazardous work of blasting must be held to assume the risk of injury, but he does not assume the risk imposed by the master's negligence, but only that incident to the employment when conducted with reasonable care; and the master engaged in the hazardous work of blasting must adopt the reasonable safeguards known to science for the protection of his workmen; otherwise he is guilty of negligence.

Knight v. Donnelly Bros.

4. ——: ——: ——: ——: **Contributory Negligence: Evidence.** Evidence reviewed and a servant is held not to have assumed the risk of injury under the circumstances nor to have been guilty of negligence.

5. ——: ——: ——: **Fellow-Servant: Evidence.** On the evidence it is held that the negligence complained of was not that of the fellow-servant but of a vice-principal.

6. ——: ——: ——: **Evidence: Res Gestae.** Where the petition complained of the negligence in the charging and discharging of a blast, evidence of stone being thrown into adjacent streets and neighboring buildings is admissible as a part of the *res gestae* and as showing the nature and direction of the explosive force, since these bear upon the question of negligence and the effects of blast are compelled to be confined to the property on which it was discharged.

7. ——: ——: ——: ——: ——. And the fact that the injured party was a servant stationed by the master in a public street can not alter the rule, since he had a right to assume that stones would not be thrown into such street and that his position was safe, while knowledge to the contrary might have deterred him from the employment.

8. ——: **Damages: Parent and Child: Excessive Verdict.** A judgment for two thousand dollars in favor of the parents for the death of a telegraph operator seventeen years of age, who was earning forty-five dollars a month, is considered not excessive.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmonds* for appellants.

(1) The court committed error in overruling defendants' demurrer to the evidence. The defendants were charged with three negligent acts, viz.: (a) negligently loading, (b) negligently covering, (c) negligently exploding a blast. (2) There is not a particle of evidence anywhere in the record showing, or tending to show, any such negligence. A party can not state one cause of action in his petition and recover upon

another.  Schneider v. Patton, 175 Mo. 684; McCord v. St. Joseph, 181 Mo. 678; McClure v. Feldman, 108 Mo. App. 630; Gibeline v. Smith, 106 Mo. App. 545; Studenroth v. Hammond, 106 Mo. App. 480; McKee v. Railroad, 96 Mo. App. 671.  (3)  Not only does the evidence fail to show any such negligence as is charged in the petition, but it fails to show any sort of negligence.  (4)  The court committed error in admitting immaterial, irrelevant and incompetent testimony.  (5)  Deceased assumed the risk, incident to the work of excavating by blasting, and defendants are not liable.  Administrator v. Lime & Cement Co., 113 Mo. App. 338; Brown v. King, 100 Fed. 561.  (6)  If there was any negligence, it was the negligence of a fellow-servant, and defendants are not liable.  All the men were fellow-servants of Knight is established by the following authorities: Schaub v. Railroad, 106 Mo. 74; Hughes v. Fagan, 46 Mo. App. 37; Sheehan v. Prosser, 55 Mo. App. 569; Ryan v. McCully, 123 Mo. 636; 12 Am. & Eng. Enc. of Law (2 Ed.), 505.  (7)  The verdict of the jury and the judgment of the court were excessive.  Matthews v. Railroad, 26 Mo. App. 87.

*Laughlin & Kenworthy* for respondents.

(1)  The court committed no error in overruling defendants' demurrer to the evidence.  (2)  Furthermore in casting rocks into the public highway defendants were guilty of a trespass without proof of negligence, as was recently decided by this court in Hoffman v. Walsh, 117 Mo. App. 278.  In doing this unlawful act they killed one of their own servants.  Sackewitz v. Mfg. Co., 78 Mo. App. 144; Blanton v. Dold, 109 Mo. 64; Thompson on Negligence, sec. 3883.  The court committed no error in admitting immaterial, irrelevant and incompetent testimony.  (3)  Defendants' next assertion that the deceased assumed the risk

is not well taken. (4) The claim that the deceased was a fellow-servant of the foreman, Broome, is opposed to the decisions in this State. Moore v. Railroad, 85 Mo. 588. Kelly v. Stewart, 93 Mo. App. 47; Bain v. Foundry and Machine Works, 75 Ga. 718.

JOHNSON, J.—Action by the parents of a minor to recover damages for his death which they allege was caused by the negligence of defendants. The jury found for plaintiffs in the sum of three thousand dollars, but under pressure from the court, a remittitur of one thousand dollars was filed and entered. Defendants' motions for new trial and in arrest of judgment then were overruled. Judgment was entered in favor of plaintiffs in the sum of two thousand dollars and defendants appealed.

At the time of his death which occurred November 27, 1905, plaintiffs' son, Arthur T. Knight, was sixteen years old and unmarried. He had lived with his parents in Detroit, Michigan; had completed a course in a business college where he studied telegraphy and then had been employed as a telegraph operator in a railroad office in Detroit, at a salary of forty-five dollars per month, which he gave to his parents. Suddenly and without apparent cause, he quit this employment and left Detroit to seek his fortune elsewhere. Six weeks later, he arrived in Kansas City and from there wrote his parents of his intention to return home in a few days. The next day, in order to procure funds to take him back to Detroit, he sought and obtained from defendants employment as a laborer. Defendants were contractors employed by the Scarritt Estate to excavate for the foundation of a large office building to be erected at the northwest corner of Ninth street and Grand avenue, in the heart of the business district of Kansas City. The sub-surface to be removed was a bed of rock. Defendants found it necessary to blast

and, beginning at the southwest corner of the place to be excavated, prosecuted the work in a northeasterly direction. At the time Knight was employed, the excavation extended back to a place about forty feet from Ninth street (which runs east and west) and twenty-five feet from Grand avenue, which crosses Ninth street at right angles. The point of attack was a perpendicular bank, perhaps seventy-five feet long and ten feet high, which presented a stratified formation. At the top appeared a ledge of white limestone five or six feet thick, closely integrated and quite hard; then a layer of soft, yellow limestone about three feet thick; then a thin streak of soapstone followed by a layer of blue limestone. Some of the witnesses say the presence of mud seams or similar "faults" was discernible on the face of the bank; others that it was not, but all agree such "faults" existed.

Under the direction of defendants' foreman, preparations were made to explode a blast. A hole two inches in diameter was drilled vertically to a depth of ten feet from the top of the bank and about ten feet back from the edge. In penetrating the lower strata, the drill indicated that the substance encountered was unusually soft and the workman in charge of the drill reported the fact to the foreman. When the hole was finished, a stick of dynamite was placed at the bottom and exploded, for the double purpose of enlarging the receptacle for the charge of powder and of making it dry. Thirty-two pounds of black blasting powder then were poured into the cavity; the hole was packed with dirt and covered at the top with timbers and loose rock and a fuse was inserted and ignited. Knight, who had been hired that morning as a shoveler and who had no experience in blasting, was stationed by the foreman in Ninth street in a southwesterly direction from the face of the rock and was directed to warn people on the street that an explosion was about to occur. Contrary

to the expectation of all concerned in the work, the blast failed to dislodge the top ledge of white limestone. Instead, it blew out laterally and showered loose stones from the lower strata towards the southwest into the street. Knight ran to escape but a large stone struck the back of his head, killing him instantly.

The facts stated appear in the evidence introduced by plaintiffs. Defendants offered no evidence. The specific misconduct alleged in the petition is that "defendants so carelessly and negligently loaded, covered and exploded a blast of high explosives that rocks were hurled a long distance from said premises and on to the public highway and one of said rocks struck said Arthur T. Knight at his station, killing him instantly." The answer contains a general denial and pleas of assumption of risk and contributory negligence.

First, we shall dispose of the questions presented by the demurrer to the evidence offered by defendants which the court overruled. It is argued that the evidence completely fails to sustain any one of the three charges of negligence as nothing appears from which it reasonably may be inferred that the unlooked-for result of the blast was due to improper loading, covering or exploding of the charge. We think the scope allowed by defendants to the averment in question is entirely too restricted. Evidently, the pleader intended to make it cover the widest possible range and to include every step preparatory to the explosion. The charge is so general in its nature that defendants would have been entitled to have had it made more specific had they filed a motion for that purpose. As they did not choose thus to call for specific information, but answered to the merits, they cannot now be heard to complain of the general character of the charge, nor are they entitled to a strict construction of the petition. It is well settled that where the defendant fails to attack the petition either by demurrer or motion, and

answers to the merits, the allegations of the pleadings should be liberally construed in favor of the plaintiff. The charge is broad enough to cover the particular negligence we find the evidence tends to prove. The rule invoked by defendant that plaintiff shall not state one cause of action in his petition and recover upon another has no application to a case where the specific negligence proved is within the scope of negligence only generally pleaded in the petition.

Further, it is urged that "not only does the evidence fail to show any such negligence as is charged in the petition, but it fails to show any sort of negligence." In support of this proposition, it is argued: "All the evidence shows that the drill hole was located in the usual and ordinary place (the work had been going on there for two months); that it was bored in the usual and ordinary manner, of the usual and ordinary size, the usual and ordinary depth; that the charge was of the usual and ordinary material, of the usual and ordinary quality and quantity, and inserted in the usual and ordinary manner; that the fuse was that ordinarily used, inserted in the usual and ordinary manner; that it was "tamped" in the usual and ordinary way; that the blast was covered with heavy timbers, in the usual and ordinary manner, to hold down the rocks, and that they remained in place after the explosion. But an unusual, unexpected and unforeseen occurrence happened—one which had never happened there before. The blast found vent, and blew out at the "face" of the ledge, near the base, throwing a large mass of rock in a southwesterly direction. As shown by plaintiff's witnesses, this accident (it was nothing else) was found to have occurred by reason of a "fault" or seam in the rock about eight or nine feet below the surface."

All this may be conceded to be true and still we find ample room in the facts before us for a reasonable mind to conclude that defendants were negligent in the

discharge of their duty to employ reasonable care to provide their servant with a reasonably safe place in which to work. Had they made ordinary use of their senses and experience, they would have known that to blast in the manner they did could have had no other result. Here on top was a thick ledge of tough, hard rock, capable of offering great resistance to the upward force of a blast of powder placed at a depth of four or five feet beneath it. Below this ledge were strata of comparatively soft and weak substances that could not offer an equal lateral resistance to that presented by the capping ledge. The explosive used was one that expends its force about equally in all directions, when confronted on all sides by opposition of equal strength, but which has a tendency to concentrate its power on a weak place in the defensive wall. With these primary facts before them, how could they fail to know that if they placed a heavy charge of powder ten feet below the top of the bank and ten feet from its face, the blow-out would be towards the exposed side and not upward?

Defendants' foreman in charge of the operation admits he knew the character of the geological formation and, if some of plaintiffs' witnesses. are to be believed (and we see no reason for rejecting their testimony) he must have known of the presence of the "fault" which greatly weakened the exposed wall. It is clear he used no care at all. It will not do to excuse him on the ground that he located, loaded and exploded the blast as he had been doing before. In employing a force so highly dangerous and destructive, ordinary care required him to inspect closely the character of the wall and the drill operations in order that he might know where to place the hole, how deep it should be drilled, and of what strength to make the charge. There was no compulsion on him to sink the hole ten feet deep and when he saw that a charge placed at that depth would blow out the side, he should have placed

it, if safety required, no deeper than the bottom of the stratum of white limestone. This might have necessitated the firing of an extra shot to remove the lower part of the wall, but he should have incurred such additional trouble and expense rather than to take chances on imperiling the safety of others. . The facts before us accuse him of inexcusable negligence and we pass to the question of whether the risk which resulted in the death of plaintiffs' son was an ordinary hazard of the employment and, consequently, one which the servant assumed.

It is true that the violent projecting of stones into the air is one of the usual incidents of blasting in rock and that the exact extent, direction and falling places of the projectiles can not be foretold even by the exercise of the highest degree of care. Servants engaged in such extremely hazardous work must be held to assume the risk of being injured by such falling stones as one of the natural dangers of the service. But the master owes his servant the duty not to increase by his own negligence the natural dangers of the employment. The rule is too well settled in this State to require the citation of cases that the servant does not assume the risks imposed by his master's negligence, but only those which are incidental to the employment when conducted with reasonable care. Further, it has been held, and the doctrine commends itself to one's sense of humanity, that "occupations which can not be conducted without necessary danger to life, body or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science." [Mather v. Rillston, 156 U. S. 391; Seals v. Whitney, 130 Mo. App. 412.] Ordinary care demands the taking of precautionary steps to protect others from injury commensurate with the apparent dangers of the situation and the failure of an employer engaged in the prosecution of a highly dangerous business, such as blasting, to adopt

the reasonable safeguards known to science for the protection of his workmen, constitutes a failure to measure up to the standard of ordinary care and an injury sustained by the servant from a breach of this duty is not to be regarded as the resultant of a natural risk.

With these principles in mind, we find that Knight's death was not due to a risk assumed by him. From what we have said, it is apparent that the general course of an explosion employed in blasting may be controlled by the observance of the rules of science and skill. Further, it appears that defendants' foreman negligently disobeyed these rules and that, had they been followed, the young man's station in Ninth street fixed by the foreman himself, would have been beyond the range of falling missiles shot upward. It was the lateral direction given the explosion that caused his death and this, as we have shown, was the direct result of negligence. There is no place in this case for the application of the doctrine of assumed risk. Nor do we find any evidence of contributory negligence. Knight was where his master directed him to be, was ignorant of what was coming, was unskilled in the work and had no means of knowing the existence of the danger that was suddenly to snuff out his life. Contributory negligence is an affirmative defense and, in this case, is wholly unsupported by evidence.

Equally without foundation is the contention that Knight's death was caused by the negligence of a fellow-servant. The hole was drilled, loaded and the charge exploded by other laborers, but the operation was performed under the immediate supervision of defendants' foreman and according to his directions. The foreman must be regarded as defendants' vice-principal, entrusted with the performance of their duty to their servant to use ordinary care to provide him with a reasonably safe place in which to work. The rule of

*respondeat superior* applies to hold defendants liable for the results of their foreman's negligence. No error was committed in overruling the demurrer to the evidence.

Relative to the objections made to the rulings of the learned trial judge in the admission of evidence, we deem only one of them worthy of discussion. Plaintiffs were permitted to show, over the objections of defendants, that people were in the public streets adjacent to the property at the time of the explosion and also to show that missiles were cast into the streets and against nearby buildings. The evidence was admissible for the reason that the facts disclosed belonged to the *res gestae* and, in showing the nature and direction of the explosive force, had a direct bearing on the issue of defendants' negligence. Further, it was material to the issues of assumption of risk and contributory negligence raised by the answer. In blasting in the heart of a large city and in close proximity to the public thoroughfares and business buildings, defendants were bound to confine the results of the operations to the property on which they were working. They had no right to throw projectiles into the busy streets nor to bombard nearby buildings with them. In Hoffman v. Walsh, 117 Mo. App. l. c. 286, this court, speaking through Judge BROADDUS, had occasion to say on this subject: "It would be against every conception of right reason to hold that one proprietor can blast rock upon his own premises and throw them upon that of his neighbor and excuse himself on the ground that he was in the exercise of due care in so doing. It amounts to a plea of justification for the trespass. That is, that the trespass or nuisance was done without negligence, but with care and skill."

True it is that defendants' duty to their servant was different in nature from that which they owed to people using the streets and to owners and occupants of adjacent buildings, but in deciding whether or not

to engage in the employment, Knight must be presumed to have taken into account the nature of defendants' obligation to others and to have relied on the proper performance of that obligation.   He had the right to assume that stones would not be thrown into the streets and that his position in Ninth street would be safe. Had he known in advance that defendants recklessly would invade the property rights of others and threaten their safety, it is fair to presume he would have refused the employment.   The direct relation of this evidence to the defensive issues noted is too apparent to call for further elucidation.

What we have said disposes of the points made by defendants on the instructions given to the jury. The only criticism we have to make of the instructions is that they are entirely too favorable to defendants.

Finally, it is urged that the judgment is excessive.   We do not think  so.   The young man at the time of his death was not quite seventeen years of age and still lacked four years of having reached his majority.   It is shown that before leaving home, he was earning $45.00 per month as a telegraph operator and that he gave his wages to his parents.   Further, it is shown that the wages paid telegraph operators range from $40.00 to $200.00 per month.   The young man was on the point of returning home, and the jury was entitled to infer that he might resume the vocation for which he was trained and, during the four years of his minority, might earn higher wages than he had been receiving.   Without considering other elements of damage, we cannot say, as a matter of law, that the net pecuniary value to plaintiffs of their son's services would not have aggregated the amount of the judgment.

A careful consideration of the entire record and of all of the questions raised by defendants convinces us that the case was fairly tried and that the judgment

is for the right party. Accordingly, it is affirmed. All concur.