Scalpino v. Smith.

---

KATIE SCALPINO, Respondent, v. LUCIUS J. SMITH, Appellant.

Kansas City Court of Appeals, March 6, 1911.

1. PLEADING: Negligence: Trespass: Specific Allegations. Plaintiff's petition by specific allegations based her right to recover on the negligence of defendant. *Held*, on the theory that plaintiff's action is grounded in negligence, the demurrer to the evidence should have been sustained, since plaintiff failed to establish by proof specific acts of negligence charged in the petition. In an action *ex delicto*, however, where the real cause is not negligence, but a different tort of which negligence may be an ingredient, but is not an essential element, the averment of

negligence should be regarded as immaterial, and the pleader should not be held to proof of that which forms no essential part of her cause of action. Hence, the act of the defendant, in storing a dangerous quantity of dynamite on his premises was an invasion of the personal and property rights of the plaintiff who dwelt within the range of its destructive force, and defendant is liable regardless of the question of the degree of care he exerted to prevent the explosion which injured plaintiff by throwing her from her bed in a house situated over 1000 feet from where the dynamite was stored.

PERSONAL INJURY: Explosion: Jury Question. Whether plaintiff could have been hurled out of bed in a direction *towards* the explosion, is a question of fact for the jury to determine, and the appellate court will not say as a matter of law that plaintiff could not have been hurled towards the explosion.

3. PLEADING: Variance. Where the petition charges that the stove was thrown against plaintiff, while the proof shows that she was thrown against the stove, the variance is not fatal but immaterial, because the inaccurate allegation could not have misled defendant to his detriment.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*John H. Eaton, E. H. McVey*, and *Warner, Dean, McLeod & Timmonds* for appellant.

(1) The plaintiff utterly failed to prove her case and the demurrer offered at the close of plaintiff's evidence and renewed at the close of the testimony should have been sustained for the following reasons: Under the instructions of the court there was no evidence submitted to the jury in support of the specific negligence pleaded in the petition. The pleading of specific negligence excludes an offer of proof in support of a general plea of negligence. McManamee v. Railroad, 135 Mo. l. c. 447; Watson v. Railroad, 133 Mo. 246; Walthier v. Railroad, 71 Mo. 515; Schneider v. Railroad, 75 Mo. 295; 6 Thompson on Negligence, sec. 7452; 31 Cyc. of Law and Proc., p. 85. (2) The court committed error in giving plaintiff's instruction No. 1 for the following

reasons: In the use of the expressions "highest prac-
tical degree of care" and "highest degree of practical
care," the court imposed a degree of care upon defend-
ant and one which it was error to impose. There are
no degrees of care recognized in law; only such care as
an ordinarily prudent man would use under similar
circumstances. 12 Am. and Eng. Cyc. of Law, 514;
19 Cyc. Law and Proc., p. 6; Furth v. Foster, 7 Raub.
N. Y. 484; Walker v. Railroad, 71 Iowa 658; Foley v.
Railroad, 48 Mich. 622. The appellant was denied its
right to have a specific charge of negligence preferred
against it in the instructions and its right to have the
jury restricted to the particular acts of negligence of
which there was some proof. The instruction left the
jury to conjecture instead of informing them what acts
would suffice to prove negligence. The instruction
should have defined the issues the jury were to try.
Sommers v. St. Louis Transit Co., 108 Mo. App. 319;
Schroeder v. Transit Co., 111 Mo. App. 76. (3) The
verdict is contrary to the evidence and to instruction
No. 13, for the following reasons: The evidence of the
plaintiff as to the manner in which the injury was sus-
tained is contrary to the physical facts and neither
courts nor juries can, without stultifying themselves,
yield to it an iota of probative force or effect. Payne
v. Railroad, 136 Mo. 575; Railroad v. Vremeister, 112
Ill. App. 346; Wray v. E. L. & W. P. Co., 68 Mo. App.
389; Baker v. Railroad, 122 Mo. 589; Emrich Furn. Co.
v. Byrnes, 87 N. E. 1042; Zalotuchin v. Railroad, 127
Mo. App. l. c. 584; Railroad v. Collier, 157 Fed. 353,
and cases cited. (4) The court was in error in over-
ruling defendant's motion to strike out part of the testi-
mony of the witness Dr. Blair, for the following rea-
sons: The witness was permitted to testify as to an
opinion based upon a history given to him by the plain-
tiff. The witness was appointed by the court to make
an examination of the plaintiff and had no previous
knowledge of the case. Under such circumstances the

evidence was merely the evidence of plaintiff's self-serving declarations, and its admission was error. Railroad v. Wiley, 121 S. W. 402. (5) Counsel for respondent was guilty of improper, harmful and prejudicial remarks in his argument to the jury and the court erred in failing to sustain the objections of the defendant thereto, and in failing to instruct the jury to disregard these remarks, and in failing to rebuke counsel therefor. Fathman v. Tumilty, 34 Mo. App. 241; Churchman v. Kansas City, 49 Mo. App. 370; Haynes v. Town of Trenton, 108 Mo. 133; State v. Mahly, 68 Mo. 319.

*Aleshire & Gundlach* and *Ben T. Hardin* for respondent.

(1) Appellant is in error in his assumption in point 1 of his brief, that the cause was submitted on a plea of specific negligence. The allegation of negligence in the petition on which the case went to the jury was "that by reason of the negligence of such person so placed in charge thereof by defendant, said dynamite and other highly explosive and dangerous substances exploded." This is a general allegation of negligence and the jury were limited and restricted to that allegation alone, by instruction numbered 1, given for plaintiff. The allegation does not specify any particular act of negligence, but says generally that by reason of the negligence of the person in charge of the dynamite, the explosion occurred. If the allegation had pointed out wherein he was negligent, it would be an allegation of specific negligence. Price v. Railroad, 220 Mo. 435; Loftus v. Railroad, 220 Mo. 470; Freeman v. Foreman, 141 Mo. App. 359; Marriott v. Railroad, 142 Mo. App. 199; Wolven v. Traction Co., 143 Mo. App. 643. (2) The court committed no error in giving plaintiff's instruction numbered 1. It is the law, and is strictly within the terms of the petition and the evidence in the case. And the degrees of care required in such cases are well recognized by the appellate courts of this state.

Scalpino v. Smith.

Price v. Railroad, 220 Mo. 444; Loftus v. Railroad, 220 Mo. 478. The allegation of negligence in the petition being a general one, there is no question as to plaintiff's right to prove specific acts of negligence that caused the explosion, and then to have the jury instructed in a general way in accordance with the allegations of the petition. Wolven v. Traction Co., 143 Mo. App. 643, 648; Price v. Railroad, 220 Mo. 435. And the degree of care required in the instruction is that required by law. Such dangerous and deadly agencies as dynamite must be kept under control of those handling it. This case is governed by the rule of law which obtains in the operation of dangerous mines and electricity. Day v., Light, Power & Ice Co., 136 Mo. App. 274; Byerly v. Light, Power & Ice Co., 130 Mo. App. 593; Luehrmann v. Gas Light Co., 127 Mo. App. 213; Cessna v. Railroad, 118 Mo. App. 659; McDaniels v. Mining Co., 110 Mo. App. 706, 712; Winkelman v. Electric Light Co., 110 Mo. App. 184; Geismann v. Electric Light Co., 173 Mo. 654.

JOHNSON, J.—This is an action to recover damages for personal injuries inflicted by an explosion of dynamite. A trial resulted in a verdict and judgment for plaintiff in the sum of five thousand dollars, and the cause is here on the appeal of defendant.

The injury occurred at 7:30 a. m. March 4, 1907, in one of the outer residence districts of Kansas City, Kansas. Defendant was a contractor engaged in building a railroad through that part of the city. He was using from 300 to 1000 pounds of dynamite per day in blasting. The dynamite was hauled from a powder mill some twenty miles away and defendant generally kept on hand a supply of 3000 pounds which he stored on nearby vacant land in two small, crude, frame buildings, each about eight feet long and six feet wide. A servant of defendant—Pat Keighan—was the caretaker of the storehouses and the evidence shows he was ex-

perienced in handling dynamite. It appears this explosive freezes at a temperature of forty degrees Fahrenheit, and that it cannot be used while frozen. The weather was cold enough to freeze the dynamite and it was Keighan's duty to thaw a supply for the day's use. About 2500 pounds were stored in one building and in the other building, boxes of dynamite containing in all, perhaps, 300 pounds were placed on shelves built around three sides of the room. There was a small coal stove in the middle of the room and Keighan built a fire in the stove at 5:30 o'clock that morning. He went to breakfast and on his return rearranged the boxes to facilitate the thawing and put more coal in the stove. Having a headache he went outside and closed the door after him. In about ten minutes he looked in and discovered that one of the boxes had caught fire. He carried it and others outside but when one blazed up as he was carrying it out on his shovel, he abandoned his task, sought safety in flight, and escaped injury. All the dynamite in the two buildings exploded and a great hole in the ground marked the place where the building had stood. Plaintiff, a young unmarried woman, living with her parents was in bed asleep at the time. The house in which she lived was 1030 feet northwest of the storehouses. She and her mother were sleeping in the same room but in different beds. Plaintiff's bed was in the northeast corner of the room and she was lying with her head towards the east. A stove stood near the south wall some five or six feet south of the foot of the bed. Plaintiff's mother was asleep in a bed in the northwest corner of the room. The evidence of plaintiff tends to show that the force of the explosion projected plaintiff out of bed in a southwesterly direction and that her flight was arrested by her body striking the top of the stove. Plaintiff's mother was thrown out of her bed by the explosion and both were unconscious for some time. Mrs. Scalpino first recovered consciousness and

found her daughter lying on the floor near the south wall. A physician was called and he found, so he testifies, that plaintiff's principal injuries consisted of a duplicate fracture of the fifth, sixth and seventh ribs on the left side; of a puncture of the left lung by one of the broken ribs resulting in hemorrhage, and of a severe nervous shock. Traumatic pneumonia followed and eventually the left lung became completely atrophied. According to this physician the nervous disorders initiated by the injury constantly have been growing worse and are tending towards a most serious state of nervous breakdown. In addition to these permanent conditions, plaintiff now is suffering from pericarditis, or enlargement and chronic inflammation of the covering of the heart. In short, her evidence depicts her as a physical and nervous wreck with no hope of any amelioration of her condition. Plaintiff introduced as a witness a physician (Doctor Blair) appointed by the court to examine her for the purpose of testifying about her condition. He found that three ribs had been fractured and we think it is a fair inference from his testimony that plaintiff's nervous condition is very serious. He found that her heart is diseased, but his diagnosis is that the disease is *stenosis,* or valvular contraction, and that its origin preceded the injury and that it was not aggravated by it. Opposed to this diagnosis are the opinion of plaintiff's experts to which we have referred and the historical facts adduced by plaintiff's witnesses that before her injury she was in perfect and robust health with no symptoms of organic disease. In such state of proof we feel compelled, in the consideration of the questions presented by the demurrer to the evidence to adopt plaintiff's view of her injuries and, therefore, to assume that as a direct and natural consequence of her injury she is afflicted with permanent diseases of her lungs, heart and nervous system.

The petition alleges "that the dynamite and other

explosives contained in said shanties were of a danger-
ous and highly explosive character and that defendant
was negligent in storing such a quantity of such a char-
acter of explosives in such unstable and unprotected
places and with such proximity to the thickly settled
neighborhood in which the same were located; that
defendant was guilty of negligence in placing in charge
of said dynamite and other explosives an incompetent
person; that the explosion aforesaid was caused by the
negligence aforesaid on the part of the defendant."

On behalf of the plaintiff the court instructed the
jury: "that if you find and believe from the evidence
that on the 4th day of March, 1907, in the county of
Wyandotte, State of Kansas, the defendant, L. J. Smith,
had a large quantity of a highly explosive substance
commonly known as dynamite, stored in frame struc-
tures in the immediate neighborhood of plaintiff's resi-
dence, or in such close proximity thereto that a rea-
sonably prudent person in the exercise of reasonable
care under all the circumstances would or should have
known that plaintiff's residence was within the danger
radius of an explosion of said dynamite, then defendant
was chargeable with the highest practical degree of care
over said dynamite to prevent its explosion; and if you
find and believe from the evidence that at the time and
place mentioned in evidence said dynamite was in charge
of one of defendant's servants, and that defendant's
agent and servant in charge of said dynamite, at the time
and place herein mentioned, did not exercise the high-
est degree of practical care to prevent the explosion of
said dynamite, but was guilty of any negligence in re-
gard thereto, and as a direct result thereof said dyna-
mite exploded, and that in direct consequence of such
explosion plaintiff was injured, then your verdict must
be for the plaintiff."

Among the instructions given at the request of de-
fendant are the following: "The court instructs the
jury that there is no evidence in this case that the de-

fendant placed the dynamite in question in charge of an incompetent person." "The court instructs the jury that there is no evidence in this case that the defendant was negligent in storing the dynamite in unstable and unprotected places and in proximity to the neighborhood in question." "The court instructs the jury that there is no evidence in this case that the defendant was negligent in storing the dynamite in the two small frame shanties or buildings referred to in the petition."

Plaintiff alleges in her petition all of the facts constitutive of any cause of action she might have on account of personal injuries received from an explosion of dynamite stored by defendant on his premises but she bases her right to recover on negligence of defendant, and the basic issue submitted in her instructions is whether or not the explosion was caused by "any negligence" of defendant. Counsel for defendant argue that the allegations of negligence are specific and invoke the well settled rule that when a plaintiff specifically pleads the negligent acts of which he complains he is held to his specifications and is not permitted to recover upon any other ground than that he tenders to his adversary. Plaintiff concedes the rule but insists that the negligence averred is general and not specific. We find the allegations are specific of two acts of negligence, i. e., first, in storing the dynamite in unstable and unprotected places and, second, in placing the storehouses in charge of an incompetent person.

Granting for argument that defendant had a right to keep on his premises a highly dangerous explosive in a quantity to menace his neighbors; that his only duty to them was that of exercising care to prevent an explosion, and that a neighbor injured on his own premises by an explosion would have no cause of action against defendant except one grounded in the negligent breach of such duty, it is very clear under such premises that plaintiff has been allowed to recover, not on the negligence she alleged but on an entirely differ-

ent ground. The court expressly instructed the jury that the defendant was not guilty of negligence in either of the respects alleged and then gave them permission to return a verdict for plaintiff on the finding that the explosion was due to any negligence of defendant. This was error under the rule to which we have referred and which is succinctly stated in the following excerpt from the opinion in McManamee v. Railway, 135 Mo. l. c. 447:

"The practice is well established in this state that when a general allegation of negligence, like this, is followed by an enumeration and averment of specific acts of negligence, the plaintiff will be confined to the negligence specifically assigned. It follows that the court did not err in restricting the plaintiff's recovery to proof of one of those specific grounds of negligence. [Watson v. Railroad, 133 Mo. 246.] When specific negligence is charged such general allegations used in connection with the specific charge do not admit of proof of negligence other than that specifically stated. [Waldhier v. Railroad, 71 Mo. 515; Schneider v. Railroad, 75 Mo. 295."]

On the theory that plaintiff's action is grounded in negligence, the demurrer to the evidence should have been sustained, since plaintiff failed to establish by proof the specific acts of negligence charged in the petition. But in an action *ex delicto* where the real cause is not negligence but a different tort of which negligence may be an ingredient but is not an essential element, the averment of negligence should be regarded as immaterial and the pleader should not be held to proof of that which forms no essential part of his cause of action. Such is the view we expressed in Hoffman v. Walsh, 117 Mo. App. l. c. 287, where we said:

"The case does not fall within the rule that, where specific acts of negligence are alleged, the plaintiff is restricted to his allegations in making out his case. It comes under the different rule that, where it is not

necessary to allege negligence it is not necessary to prove it."

If, regardless of the question of the care exercised by defendant in handling the dynamite, the law gave plaintiff a cause of action against him from the bare fact that she was injured by an explosion of dynamite stored by him on his premises, the allegations of negligence in the petition and the submission of issues of negligence in the instructions should be treated as the assumption by plaintiff of a greater burden of proof than that the law compelled her to bear, and error in the submission of such issues should be held as non-prejudicial to any right of defendant. In the determination of the question of the nature of the cause pleaded in the petition, we are not concluded by plaintiff's nomenclature. The statute (R. S. 1909, sec. 1794) requires the plaintiff to give in his petition "a plain and concise statement of the facts constituting a cause of action" and it is this "plain and concise statement" that the court must consider when it comes to the task of characterizing the cause. Where, for example, the *facts* alleged are constitutive of a cause in trespass or for maintenance of a nuisance, the court will classify the cause accordingly and will not hold the pleader to a recovery for negligence because he misconceives the real nature of his action.

We think negligence was not an element of plaintiff's cause of action. We appreciate the necessity of the work defendant was doing and the fact that the expeditious and economical prosecution of that work required that a supply of dynamite be kept near the scene of activity. Railroads must be built and their way often must be blasted through rock but no such necessity could give defendant license to blow plaintiff out of her bed.

"The right of the owner of lands to the enjoyment thereof is qualified by the right of others. Thus he may pursue any lawful trade, but he cannot create a nuisance to the premises of another; so he may dig a canal, but

in so doing he has no right to blast rocks with gunpowder so as to cast them upon the premises of another . . . the defendants were liable for the injury although no negligence was shown or want of skill in executing the work was alleged or proved." [Hay v. Cohoes Co., 2 Comstock (N. Y.) 159.]

In Huffman v. Walsh, supra, we considered the nature of the act of the occupant of premises injuring persons or property on adjacent land by the use of high explosives on his own land and held, speaking through BROADDUS, P. J.:

"The question is considered in Thompson's Commentaries on the Law of Negligence. After stating that the authorities are not harmonious on the question, he says that the 'far greater number proceed upon the inquiry whether there was negligence in doing the work at all, in the place where, and at the time when, it was done—that is to say, whether the work was a nuisance, and consequently in theory of law negligence *per se.*' And further, 'It is obvious upon a moment's reflection that the work of blasting rocks, being an absolute necessity in excavating through beds of rock, in mining, in digging wells, in excavating foundations for buildings, in improving roads and streets, in digging canals, and in building railways, cannot under all circumstances be regarded as a nuisance *per se* and condemned as being negligent as a matter of law. On the other hand, it must be regarded—and the decisions so regard it—as a work which one proprietor may lawfully do upon his own land, provided he takes due care to avoid injuring persons or property in the vicinity, *and subject to his obligation to pay damages for any injury which he does in case his blasting involves a direct invasion of the premises of an adjacent proprietor.*"

"We take it that the true rule is stated in the Cohoes case and the italicized quotation from Mr. Thompson's work on Negligence. And that the rule, as so stated, applies to the case at bar. That the plaintiff

had the right to blast the rock, in order to make a trench for the sewer, cannot be denied and, as to any injury resulting therefrom to persons and property, generally speaking, he was only liable in case he was negligent in setting off the blast, which threw out the stone in question. But he was liable for *any injury*, which was the direct consequence of throwing said stone upon the premises of the owner where plaintiff was at work when he was struck by the stone, whether the defendant was negligent or not. And it can make no difference whether the injury in such cases is to the owner or his employee. It would be against every conception of right reason to hold that one proprietor can blast rock upon his own premises and throw them upon that of his neighbor and excuse himself on the ground that he was in the exercise of due care in so doing. It amounts to a plea of justification for the trespass. That is, that the trespass or nuisance was done without negligence, but with care and skill."

We continue in the opinion that the doctrine of that case is sound and, applying it to the present case, hold that the act of defendant in storing a dangerous quantity of dynamite on his premises was an invasion of the personal and property rights of his neighbors who dwelt within the range of its destructive force, and that defendant must answer in damages for the consequences to plaintiff of his wrongful act regardless of the question of the degree of care he exerted to prevent an explosion.

But defendant argues that the version of the injury given in the evidence of plaintiff is so opposed to physical facts and laws that we should reject it as devoid of probative value. The main proposition adduced in argument is that plaintiff could not have been hurled out of bed in a direction *towards* the explosion. In addition to facts already stated the evidence of plaintiff discloses that the house itself was much damaged and its furniture almost entirely destroyed. There was no

other cause for the general havoc wrought and the explosion appears as a sufficient cause. Moreover, we are not prepared to say as a matter of law that plaintiff could not have been thrown towards the explosion. That involves a question in dynamics we are not skilled enough to answer. We know in a general way that the explosive force of gunpowder is outward and that the force of dynamite is downward. It may be true, as counsel for plaintiff suggests, that since the force of dynamite is downward the incidental lateral forces created by its explosion are inward to a potential vortex, in evidence of which assertion he claims that the tops of trees broken off fell towards the force center instead of being blown away from it. We express no opinion on this subject but do say that the evidence of plaintiff raised an issue of fact for the jury to determine.

Further, defendant argues that there is a fatal variance between allegation and proof since the petition charges that the stove was thrown against plaintiff while the proof shows she was thrown against the stove. That is an immaterial variance. The fact in question is purely incidental. The important fact is that while in her own house, plaintiff was violently thrown down and injured by defendant's wrong. What she struck or what struck her in her flight are matters of the most trifling consequence about which, in the very nature of the occurrence, witnesses could not be expected to be accurate. The prime test in solving the question of the materiality of a variance is the determination of the question of whether or not the inaccurate allegation might have misled the defendant to his detriment. We do not perceive how defendant could have been misled or in any way prejudiced by the mistake.

The demurrer to the evidence was properly overruled.

What we have said answers the objections to the instructions. Other points raised by defendant have been examined and are ruled against him. There is

no prejudicial error in the record and the judgment is affirmed.

All concur.