VIOLA FRENCH, Appellant, v. CENTER CREEK POWDER MANUFACTURING COMPANY, Respondent.

Springfield Court of Appeals, July 28, 1913.

1. **PLEADING: Unnecessary Allegations: Immateriality.** Though a plaintiff alleges and attempts to prove more than is necessary to entitle her to a recovery, she will be successful if her

petition states a sufficient cause of action and her evidence sustains that cause, regardless of her failure to establish the unnecessary allegations of her petition.

2. **EXPLOSIVES: Liability of Storer: When Nuisances Per Se.** One who stores a large quantity of nitroglycerin on his premises, establishes thereby a nuisance *per se* so far as it affects or damages those in the danger zone, regardless of the degree of care he exercises. And he is liable in damages, for injuries caused by its explosion, to other persons sustaining no contractual relations to him and also liable for damages to surrounding property.

Appeal from Jasper County Circuit Court, Division No. One. *Hon. Joseph D. Perkins,* Judge.

REVERSED AND REMANDED.

*Shannon & Phelps* for appellant.

(1) The doctrine of *res ipsa loquitur*, is applicable to this case and the court should have given instruction marked C. The court instructs you that you are authorized to find that the fire in defendant's mixhouse was caused by defendant's negligence from the mere fact that said fire occurred under the circumstances detailed in the evidence in the case. Griffin v. Morris, 9 Am. Neg. 336; Renney v. Railroad, 70 Mo. 245; Brown v. Railroad, 13 Mo. App. 462; Bedford v. Railroad, 46 Mo. 456; Coale v. Railroad, 60 Mo. 227; Kenney v. Railroad, 70 Mo. 243; Wise v. Railroad, 85 Mo. 186; Miller v. Railroad, 90 Mo. 389; Gallagher v. Illuminating Co., 72 Mo. App. 576; Gibbs v. Light & Power Co., 142 Mo. App. 24; Hamilton v. Railroad, 105 Mo. App. 604; Tateman v. Railroad, 96 Mo. App. 453; Shafer v. Lacock, 29 L. R. A. 254. (2) To us it seems to be impossible to suggest any probable cause for the explosion in controversy, under the facts and circumstances of this case, not assignable to defendant's negligence, and we believe that inasmuch as no specified act of negligence was alleged instruction D

should have been given. McGrath v. Transit Co., 197 Mo. 104. (3) The court gave to the jury an instruction on the burden of proof at such a juncture in the trial of the case as to indicate that in the opinion of the court the plaintiff had not proved her case by a preponderance of the evidence.

*J. W. McAntire* for respondent.

(1) Except in cases relating to common carriers of goods and passengers, or arising out of other contractual relations, the mere fact of an explosion without affirmative proof of negligence does not raise a prima facie presumption of negligence on the part of the defendant. Hence, the maxim, *res ipsa loquituer*, does not apply to the facts of this case. Fuchs v. City of St. Louis, 167 Mo. 645; Cosulick v. S. O. Co., 122 N. Y. 123; Walker v. Railroad, 71 Iowa, 658; Losee v. Buchanan, 51 N. Y. 476; Thurman v. Whitelime Assn., 125 Mo. App. 78-79. (2) The maxim, *res ipsa loquituer*, is founded upon the following: That every apparent wrong resulting in injury to another, which may only be palliated or explained by facts within the peculiar knowledge of the perpetrator, carriers with it the proof of its wrongful character and places upon him the burden of offering a just excuse. Morgan v. Cox, 22 Mo. 373; Tateman v. Railroad, 96 Mo. App. 448; Rallan v. Electric Co., 20 Mo. App. 270; Blanton v. Dold, 109 Mo. 65-74; Sharp v. Railroad, 114 Mo. 94 Gammon v. Gas Co., 145 Mo. 502; Thompson v. Railroad, 243 Mo. 354. (3) Where it is shown that there were present two causes, the burden in on the plaintiff to show which of the causes produced the explosion. Fuchs v. City of St. Louis, 167 Mo. 620. (4) Where a plaintiff's case is founded on negligence, the burden of proof is on him throughout the trial. Dowell v. Gutherie, 99 Mo. 653. (5) It is not negligence not to take precautionary measures when the injury could not have reasonably been anticipated. Brew-

ing Co. v. Talbot, 141 Mo. 683. (6) The injury complained of in this case was from a vibration in air or earth, and there is a distinction between debris thrown on property of another and injury caused by vibration in air or earth. In the latter case, it is held in order to recover for the injury, it must be shown that the work was negligently or carelessly done. Booth v. Railroad, 24 L. R. A. 105; Simon v. Henry, 62 N. J. L. 486; French v. Vix, 143 N. Y. 90; and authorities quoted 19 Cyc. 7, 8. (7) The appellant complains of the courts' refusal to give instructions "C" and "D," neither of which should have been given. First, because the first would have been equivalent to a peremptory instruction to find in favor of the plaintiff and would have taken from the jury all questions of fact involved in the trial. The second, for the reason that it would have been an unauthorixed comment upon the evidence. Thompson v. Railroad, 243 Mo. 354.

FARRINGTON, J.—This was a suit for personal injuries alleged to have been sustained by Viola French, the plaintiff, as the result of an explosion of defendant's powder manufacturing plant in Jasper county. The petition charges that on or about the thirteenth day of February, 1912, the defendant *carelessly and negligently* caused and permitted a large quantity of nitroglycerin, dynamite and other explosives to explode at and in said powder manufacturing plant. It is then alleged that the explosion was such as to shake plaintiff's house in such a way as to cause a picture which was hanging on the wall to fall upon plaintiff, who was confined to her bed by reason of illness, injuring her, etc. The answer admitted the incorporation of the defendant, but denied each and every other allegation of plaintiff's petition.

The evidence of the plaintiff consisted of her own testimony detailing the extent of her injuries and of

the testimony of Fred Bernard, an employee of the defendant who was on the premises a few minutes before the explosion occurred. His testimony, and that of witness Seibert, another employee of defendant and who testified in its behalf, coupled with the testimony of certain officers of the company who were called as its witnesses, disclosed the manner in which the powder plant was operated. It is undisputed that the building in question was kept locked against strangers; that the company provided special clothing and rubber sole shoes for employees while at work in this building; that no matches were allowed on the premises; that the bearings on the machinery in this building were inspected and kept well oiled, and in fact had been oiled only a short time before the explosion occured; that the fire which caused the explosion was discovered on the top (third) floor of the building by witness Seibert, one of the two men who were in the building at the time. This witness, who testified for the defendant, had worked at defendant's plant for several months, but on the morning the explosion in question occured he was working for the first time on the third floor, engaged in putting "dry dopes" (consisting of nitrate of soda, wood pulp, wheat flour, sulphur, and dry material of that character) through a chute into a screen on the second floor from which they were conveyed through a chute to a large mixing bowl on the first floor, and in putting nitrate of ammonia in a shaking or moving screen which operated just above the floor of the top story, and beating the lumps with a paddle or club so that they would be reduced in size and go through the screen and down a chute to the mixing bowl. All these materials kept on the third floor, according to the evidence, were nonexplosive. Bernard, the only other man in the building immediately preceding the explosion, was on the first floor. The nitroglycerin was stored in lead tanks on the second floor. Bernard and Seibert had prepared two

mixings that morning and were preparing a third. It is not claimed that lightning or any other act of God caused the explosion. Bernard testified that the machinery was well oiled, and that even if it had not been, it had not run long enough that morning to get hot from friction. No fire was in or about the building so far as any of the witnesses knew. Bernard, plaintiff's witness, testified that he had worked in powder plants for twelve years and that defendant's plant was operated with the highest degree of care, and that the appliances were better arranged for the safety of employees than any he had ever worked in. The officers of the company testified that other explosions had occured at the plant and that from each of them they had learned something and immediately remedied the particular defect, but that they were entirely at a loss to know what caused the fire that produced this explosion. Seibert testified that he was beating the lumps of nitrate of ammonia and noticed a blue smoke coming up from the corner of the screen. He went down to get Bernard and by the time they returned there was a blaze all over the screen in which the ammonia had been placed. They fled and when six hundred feet from the building the explosion occurred. The building was demolished.

There is no evidence in the record of the commission of any act or the omission of any duty by the defendant or its servants which can be pointed to as the probable cause of the fire and explosion, and unless a presumption of negligence is raised by the mere occurrence of the explosion—from the application of the *res ipsa loquitur* rule— the plaintiff is not entitled to recover in her action, *provided*, negligence is a necessary element of her cause of action. The case was tried by both parties on the theory that proof of negligence was essential to plaintiff's recovery, the plaintiff contending that a presumption of negligence arose

from the mere happening of the explosion under the rule of *res ipsa loquitur* and thus made out her prima facie case, and the defendant contending that the *res ipsa loquitur* doctrine does not apply and that the plaintiff must show by positive proof some acts of negligence on the part of the defendant or its servants before a recovery would be justified. The court in refusing certain instructions requested by the defendant clearly required the jury to find before they could return a verdict for the plaintiff that she had shown by a preponderance of the evidence that defendant had been guilty of negligence, and refused to submit the the issues on the *res ipsa loquitur* doctrine. The jury returned a verdict for the defendant.

It will be unnecessary to discuss the rule of *res ipsa loquitur* because the view we take of the case is that proof of negligence, either from the mere fact of the explosion or by specific evidence, is not an essential element of liability between the parties.

As was clearly and succinctly stated by the learned judge (JOHNSON) who wrote the opinion in the case of Scalpino v. Smith, 154 Mo. App. 524, 135 S. W. 1000, where the plaintiff alleges and attempts to prove more than is necessary to entitle her to recover, she will not be required to go out of court without recovery for a failure to prove an unnecessary element, but will be successful if her petition states a sufficient cause of action to permit a recovery and her evidence sustains that cause of action.

We hold that where the plaintiff alleges and proves that defendant stored a large quantity of nitroglycerin on its premises, the very act of placing it there in dangerous quantities is in and of itself a nuisance *per se* so far as it affects or damages those in the danger zone, and that regardless of the degree of care exercised by the storer of such dangerous explosive, if an explosion occurs and injury results to one of these persons, liability attaches, and the storer must answer in damages

for the consequences which naturally flow and which common sense teaches will probably result in case the storer fails to keep the dangerous substance from exploding. This holding finds support in Missouri in the following cases: Scalpino v. Smith, supra; Hoffman v. Walsh, 117 Mo. App. 278, 93 S. W. 853; Knight v. Donnelly, 131 Mo. App. 152, 110 S. W. 687; Faust v. Pope, 132 Mo. App. 287, 111 S. W. 878.

A great number of courts have considered the question of the handling and use of explosives, and their decisions are far from being in harmony. As was said by Judge GOODE in the case of Thurmond v. White Lime Ass'n., 125 Mo. App. 73, l. c. 76, 77, 102 S. W. 617, "Two doctrines of the law approach so closely at this point that it has been found difficult to enforce one without impugning the other. One of these doctrines is that the use of his land by the owner in a lawful business and without trespass or negligence does not lay him liable for casual injury to another as a result of the use. . . . The other doctrine is that a man must enjoy his own property in such a manner as not to injure the property of others or otherwise invade their rights."

The leading case in England announcing the rule to which we adhere is that of Fletcher v. Rylands, L. R. 1 Ex. 265, L. R. 3 H. L. 330 In the exchequer chamber, Justice BLACKBURN said: "We think that the true rule of law is, that the person who, for his own purposes, brings on his lands and collects and keeps there anything likely to do mischief it if escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff's default; or, perhaps that the escape was the consequence of *vis major*, or the act of God; but, as nothing of this sort exists here, it is unnecessary to inquire what excuse would be sufficient. The general rule, as above

stated, seems on principle just. The person whose grass or corn is eaten down by the escaping cattle of his neighbor, or whose mine is flooded by the water from his neighbor's reservoir, or whose cellar is invaded by the filth of his neighbor's privy, or whose habitation is made unhealthy by the fumes and noisome vapor of his neighbor's alkali works, is damnified without any fault of his own; and it seems but reasonable and just that the neighbor, who has brought something on his own property which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there, no mischief could have accrued, and it seems but just that he should, at his peril, keep it there, or answer for the natural and anticipated consequences. And, upon authority, this we think is established to be the law whether the things so brought be beasts, or water, or filth, or stenches." When the case came up for consideration in the House of Lords, the foregoing language was approved, and Lord CRANWORTH said: "If a person brings, or accumulates, on his land anything which, if it should escape, may cause damage to his neighbor, he does so at his peril. If it does escape and cause damage, he is responsible, however careful he may have been, and whatever precautions he may have taken to prevent damage."

The syllabus of the case of Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co., 60 Ohio St. 560, 54 N. E. 528, 71 Am. St. Rep. 740, 45 L. R. A. 658, which clearly states the holding in the case, is as follows: "One who stores nitroglycerin or other high explosive on his premises is liable in damages for injuries caused to surrounding persons or property by its explosion, although he is not chargeable with either

want of care or an unlawful act in connection with the storage or casualty." "One who stores or keeps nitroglycerine or other high explosive on his premises is liable for all injury to surrounding property caused by its explosion, and such liability extends to all property within the circle of danger, whether adjacent to the premises on which the explosive is stored or not." This case discusses the different adjudications on this question, and to us seems a better and safer authority than the case of Kinney v. Koopman, 116 Ala. 310, 67 Am. St. Rep. 119, which cites many cases in support of its holding that the element of negligence is necessary to a recovery. However, the Alabama case, which is the strongest we have been able to find announcing that rule, is not entirely out of harmony with our view in the case at bar, as many of the authorities cited in that case hold that the facts, surroundings, manner, place and time of handling the explosive may or may not be a nuisance *per se*, and the decision we make is that the handling of this dangerous agency in such quantities as to endanger adjacent property (and by "adjacent" owners we mean those who may be damaged not only by the throwing of objects on their land, but by the vibrations of the earth and the concussion produced by the disturbance of the atmosphere) if done in such a manner and in such a place where the result is that they are hurt, makes the handling and keeping of the explosive at that place and in this manner in that quantity, a nuisance *per se*.

The rule which we follow is found stated in Cooley on Torts (3 Ed.), vol. 2, sec. 723, p. 1207; Sutherland on Damages (3 Ed.), vol. 4, sec. 1010, pp. 2957, 2958; Wood's Law of Nuisances, sec. 142, p. 142.

The opinion in the case of Thurmond v. White Lime Ass'n., supra, is not an authority against our holding. The writer of that opinion was discussing a case where the explosion was produced by blasting rock. The *storing* of large quantities of nitroglycerin

is not a usual and ordinary use of land, while blasting has become one of the usual incidents of excavating and quarrying. The use of explosives in blasting is ordinary; the purpose of its use is to cause an explosion, and it is used in the conduct of that business. The explosion of a powder plant, whether from accident, negligence or intention does not occur as a part of the business of conducting the plant. In other words, there is a duty in many cases to blast, but in such a way as to not injure others, while in the case of a powder plant the duty to be exercised is to prevent an explosion. In the Thurmond case the plaintiff had leased and sold the property for the purpose of allowing blasting to be carried on there, and, as said in the opinion, "ordinarily. no harm resulted to his estate from the blasting." Such, of course, cannot be true where large quantities of nitroglycerin are stored and explode.

One of the basic values of land is the right to enjoy it peacefully and to put it to any use so long as the occupant does not interfere with the same rights of adjacent or nearby owners. We must therefore hold that in a case like this, where the injured party did not sustain any contractual relation to the defendant, where she had nothing to do with the manner of operating the defendant's plant, where no relation of master and servant existed and hence no question of assumption of risk intervened, and where she in no way contributed to the cause of the injury, the defendant who placed a large quantity of explosives near enough to her home that when the same exploded by pure accident or by negligence and thus by either casting objects, or by vibrations of the earth, or by concussion produced by the disturbance of the air, and damaged the plaintiff's property or injured her person, the storer of that dangerous substance must answer for the damages directly flowing and occasioned thereby. This brings into play the principle that where a wrong is

done and one of two persons must suffer loss, law and natural justice should see to it, if possible, that he who made it possible for the damage to be done should bear that loss.

For the reasons herein appearing, the judgment must be reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion. All concur.