# CHARLES H. HOLMAN v. PATRICK H. CLARK et al; CITY OF ST. LOUIS, Appellant.

### In Banc, November 17, 1917.

1. **INDEPENDENT CAUSES: Explosion of Dynamite: Substantial Evidence: Question for Jury.** The rule that when the evidence discloses two independent causes of the injury, for one of which defendant is liable and for the other of which he is not, it is incumbent upon the plaintiff to show that the cause for which defendant is liable produced the injury, imposes upon the plaintiff the duty of offering substantial evidence tending to show that the cause for which defendant is liable produced the injury; and that having been done, the jury, under proper instructions, passes upon the question of fact thus involved, just *·* upon any other such question, and the quantum of evidence necessary to sustain a finding thereon differs not at all from that required on other issues of fact. The appellate court cannot weight conflicting evidence upon such an issue.

2. **EXPLOSION OF DYNAMITE: Independent Contractor: Liability of City.** The use of explosives by an independent contractor in the construction of a sewer, of such character as to necessitate blasting, must be foreseen by the city; but such use is lawful, and having in readiness, near the work, dynamite in proper quantities for use in blasting, is neither necessarily nor so palpably dangerous, when managed in the ordinary way, as to constitute a thing inherently dangerous; and if the explosive so held in readiness becomes, in the circumstances of a particular case, a nuisance by reason of the independent contractor's negligence of method, without more, provided he is not incompetent, he alone, and not the city, is liable for injuries resulting from explosions.

3. ———: **Negligence in Storing: Proof of Particular Causal Acts.** In determining, after an explosion, whether or not the independent contractor, engaged in constructing a sewer necessitating blasting, had created a nuisance in the street, the locality, the quantity and manner of keeping must be considered, as well as the nature of the explosive and its liability to accidental explosion; and in deciding whether or not a public nuisance existed in connection with the storage of the material which exploded, the question of the manner in which it was kept may enter into consideration; but when it is once determined upon sufficient evidence that such nuisance was maintained, then no particular causal act directly contributing to the explosion need be shown.

4. ————: **Nuisance on Private Property: Liability of City.** A city is not ordinarily liable for failure to abate a nuisance upon property of a private owner, no injury to the users of the street being threatened, since that is but a failure to exercise a governmental power.

5. ————: **Nuisance in Street: Maintained by Contractor: Liability of City.** The fact that the independent contractor was engaged in work for the city has nothing to do with the question of whether the city is liable to an owner of property, adjacent to a street, for damages to said property resulting from a nuisance created by said contractor in the street.

6. ————: ————: ————: ————: **Notice.** In the absence of notice to the city and of facts from which notice can reasonably be inferred, that the contractor, engaged in the construction of a sewer requiring blasting, had taken into the shed erected in the street, in which were a gasoline engine supplied with fuel and used in drilling rock and a large tank containing a reserve supply of gasoline and placed a few feet from the engine, some sticks of dynamite, taken from the usual place of storage near by, which did not explode, the city is not liable in damages for injury to private property abutting on the street, resulting from an explosion in the shed, in which there was no habitual storage of dynamite.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

REVERSED.

*Charles H. Daues* and *H. A. Hamilton* for appellant; *Holland, Rutledge & Lashly, A. E. L. Gardner* and *John T. Fitzsimmons,* of counsel.

(1) In many jurisdictions it is ruled that a contract for blasting is like any other contract; that the defense of independent contractor is a complete defense, and that one making a contract for blasting is not liable for the negligence of the contractor, even in the actual operation of the blast itself. Blum v. Kansas City, 84 Mo. 112; Frensch v. Vicks, 143 N. Y. 90; Herrington v. Lansingburgh, 110 N. Y. 145, 6 Am. St. 348; Pack v. Mayor, 8 N. Y. 222; Kelly v. Mayor, 11 N. Y. 432; McCafferty v. Railway, 61 N. Y. 178, 19 Am. St. 267; Hill v. Schneider, 13 N. Y. App. Div. 299; Wiener v. Hammell, 14 N. Y. Supp.

365; Edmonson v. Railroad, 111 Pa. St. 316; Tibbitts v. Railroad, 62 Me. 437; Berg v. Parsons, 156 N. Y. 109, 41 L. R. A. 391. (2) Those cases which hold that one making a contract for the doing of blasting is to be held liable for the consequences to third parties upon the ground that he has contracted for the doing of a thing inherently dangerous, have carefully limited the doctrine to injuries which result from the actual operation of blasting, and have at great pains distinguished such injuries from injuries resulting from purely collateral acts, such as the negligent handling of dynamite by the contractor not incident to the operation of blasting itself. For negligence of the contractor in matters purely collateral to the contract the employer is not liable. The principle is that applicable to all contracts for the doing of work which threatens injury. The employer is responsible only for the work which he has contracted shall be done, and not for negligence of the contractor in matters collateral thereto. Water Co. v. Waer, 16 Wall. 556; 12 Am. & Eng. Ency. Law (2 Ed.), 512; Brannock v. Elmore, 114 Mo. 55; Salmon v. Kansas City, 241 Mo. 14; 16 Am. & Eng. Ency. Law (2 Ed.), 201; Loth v. Theater Co., 197 Mo. 354; Horner v. Nicholson, 56 Mo. 221; Dillon on Mun. Corps., sec. 1723; 19 Cyc. 9; Carmon v. Ry. Co., 4 Ohio St. 399; St. Paul v. Seitz, 3 Minn. 297; Chicago v. Murdock, 212 Ill. 9; Railroad v. Yonley, 43 Ark. 508; Lancaster v. Ins. Co., 92 Mo. 460; Ardesco Oil Co. v. Gleason, 63 Pa. St. 146; Robbins v. Chicago, 71 U. S. 657; Joliet v. Harwood, 20 Am. St. 17, 86 Ill. 110; Railroad v. Tow, 66 L. R. A. 941, and note. All of the above cases show that blasting operations are legal and are recognized as such by the law. (3) The evidence in this case showed that dynamite is not of such a character as to threaten injury where small quantities are in possession of a contractor and are delivered to him from day to day as the work progresses. (4) Plaintiff failed to show whether the explosion was an explosion of dynamite or an explosion of gasoline vapor. If there are two causes which might have produced an injury, the burden is upon the plaintiff to show that the damage actually resulted from the cause alleged.

Fuchs v. St. Louis, 167 Mo. 635; Epperson v. Postal Tel. Co., 153 Mo. 346; Warner v. Railroad, 178 Mo. 125; Breen v. Cooperage Co., 50 Mo. App. 202; Searles v. Railroad, 101 N. Y. 661; Dobbins v. Brown, 119 N. Y. 188. (5) There was an improper joinder of causes of action. The code does not contemplate that one may have numerous tort claims assigned to him without consideration and then bring suit upon them in one petition.

*James R. Van Slyke* for respondent.

(1) One who uses or stores dynamite on his property is liable to his neighbor for injury or damage caused by its explosion, whether he is careful or not in the use and keep of same. Scalpino v. Smith, 154 Mo. App. 524; Blackford v. Cons. Co., 132 Mo. App. 162; Faust v. Pope, 132 Mo. App. 287; Carson v. Cons. Co., 189 Mo. App. 120; Hoffman v. Walsh, 117 Mo. App. 287; Knight v. Donnelly, 131 Mo. App. 162; Salmon v. Kansas City, 241 Mo. 14. (2) The city is under obligation to keep its streets safe. Salmon v. Kansas City, 241 Mo. 14. (3) The city is under the same liability and responsibility for the work it causes to be done as a private owner. Salmon v. Kansas City, 241 Mo. 53. (4) When work is caused to be done which is inherently dangerous and attended with danger to others either in methods necessarily employed or agencies necessarily used the principal is liable even if independent contractor is employed. Salmon v. Kansas City, 241 Mo. 47; Loth v. Theatre Co., 197 Mo. 351; Dillon v. Hunt, 105 Mo. 154; Carson v. Cons. Co., 189 Mo. App. 120; Wiggins v. St. Louis, 135 Mo. 558; Crenshaw v. Ulman, 113 Mo. 640; Eberson v. Continental, 118 Mo. App. 67; Gas Co. v. Norwalk, 63 Conn. 527; Chicago v. Murdock, 212 Ill. 9; St. Ry. Co. v. Smith, 146 Ala. 316; Logansport v. Dick, 70 Ind. 65; Mullins v. Siegel-Cooper Co., 183 N. Y. 129; Haracker v. Idle Dist. Council, 1 L. R. Q. B. 335. (5) The nature and power of dynamite has been demonstrated by universal experience and it is a matter of common knowledge that its use or presence is inherently dangerous and of this the courts will take judicial notice. Carson v. Cons. Co., 189 Mo. App. 120; Fitzsimmon v. Braun, 199 Ill. 394; Salmon

v. Kansas City, 241 Mo. 67; Scalpino v. Smith, 154 Mo. App. 523; 16 Cyc. Law & Proc. 855; 17 Am. & Eng. Ency. Law, 909. (6) Judicial notice justifies finding even against evidence. 16 Am. & Eng. Ency. Law, 852. (7) Plaintiff's petition alleges contractor kept stored and used dynamite in city street, which exploded, causing damage to plaintiff and his assignors. This states a cause of action alone, aside from other allegations, against contractor. (8) Plaintiff's evidence conclusively shows presence of dynamite at place of explosion immedately before occurrence, an explosion, and that dynamite has disappeared. The court finds the fact to be that dynamite exploded. This finding is conclusive. (9) If causes of action were improperly joined in separate counts defendant waived this defect by filing its answer. Barrie v. U. R. Co., 138 Mo. App. 640; Jaurdan v. Transit Co., 202 Mo. 418. (10) The assignment being in writing and made before institution of suit, the causes of action being assignable, plaintiff can prosecute action for himself and assignors. Guerney v. Moore, 131 Mo. 650; Dean v. Chandler, 44 Mo. App. 341; Gay v. Orcutt, 169 Mo. 406; Roth v. Wire Co., 94 Mo. App. 261; Peters v. Ry. Co., 24 Mo. 588; Snyder v. Ry. Co., 86 Mo. 613; Doering v. Kenamore, 86 Mo. 588; Chouteau v. Baughton, 100 Mo. 406.

BLAIR, J.—The city of St. Louis appeals from an adverse judgment in an action instituted against it and others to recover damages for injuries to certain residences from an explosion of dynamite in the posses- sion of a contractor who was constructing a sewer. Judgment went against the contractor, also, but it did not appeal. The finding for respondent was upon twelve counts, the first of which is typical of the rest and al-. leged, substantially: that respondent owned certain realty and the buildings thereon, in St. Louis City; that certain defendants had contracted with the city to build a sewer; that the city, prior to letting the contract, had tested the ground along the line of the proposed sewer in order to ascertain the nature thereof and thereby discovered that in the process of construction it would

be necessary to remove large quantities of rock by blast-ing near respondent's property; that the city knew or, had it exercised ordinary care, could have known, that the use of high explosives would be necessary in order to remove the rock under the terms of the contract; that the contractor would bring and store in or near the street in which the work was to be done quantities of high and dangerous explosives; and knew that portion of the city along the line of the proposed sewer was thickly settled and that the storing and using of said explosives necessary for the performance of the work under the contract would be "inherently dangerous" to persons and property in the vicinity of the proposed sewer; and that the city, during the progress of the work, knew, or by the exercise of ordinary care could have known, that the contractor was storing and using large quantities of dynamite, a high and dangerous ex-plosive, in and near the city streets for the purpose of blasting rock in order to remove it, under the contract; that the contractor and other defendants, in the per-formance of the work, on November 18, 1910, and for a long time prior thereto, "used, kept and maintained in the said city of St. Louis, near and upon a public street of said city of St. Louis, known as Canterbury Avenue, and in the immediate vicinity of the property of plain-tiff herein, high and dangerous explosives which were a menace and threatened danger to the persons and property in said vicinity, and that the keeping and main-taining of said high explosives in said city in said city street was an inherent danger and attended with danger to the persons and property in said vicinity, all of which facts plaintiffs state were known to the city of St. Louis, or could have been known by the exer-cise of ordinary care;" that at the time it let the contract the city knew or by the exercise of reason-able care could have known that the contractor was inexperienced, unskilled, irresponsible and incompetent to perform the contract work, and also knew or in the exercise of ordinary care could have known that the contractor was conducting the work in a danger-

ous manner, i. e., allowing quantities of dynamite to be collected and remain in a public street without any guard or watchman; and knew the contractor and other defendants had purchased dynamite, etc., for use in the sewer work, without making any affidavit as to the purpose for which it was to be used, in violation of the statute; that an ordinance of the city (pleaded) prohibited the keeping or storing of dynamite in the city in quantities greater than thirty pounds and the keeping of more than twenty-five pounds more than thirty minutes in a city street, and that the contractor, with the city's knowledge, violated this ordinance; that the defendants other than the city on November 18, 1910, and for a long time prior thereto kept and stored in or near Canterbury Avenue, near respondent's property, high and dangerous explosives, which it was their duty to use a high degree of care to guard and safely keep and prevent danger by reason of the explosion thereof; that "so keeping dynamite and causing work to be done requiring the keeping of said dynamite in and near the city streets was an inherent danger and threatened danger to persons and property in said vicinity and more particularly to the property of plaintiff herein, and that on said date, said high and dangerous explosives did explode and as a result . . . plaintiff's property was damaged," etc.

The other counts were based upon injuries from the same explosion to the properties of other persons who had assigned their causes of action to respondent Holman.

The city's answer consisted of (1) a general denial; (2) a plea of misjoinder; (3) a plea that contractor was an independent contractor; (4) a specific denial that the sewer contract required the bringing and storing in the street or elsewhere, near the property of respondent or his assignors, "any large quantity of dynamite;" and (5) that the "explosion, if any, . . . did not occur in and was not incident to the performance of anything required to be done by the contract of this defendant with its said contractors, but oc-

curred in a matter entirely collateral to the performance of said contract."

The briefs proceed upon the theory that the relation between the city and the corporation constructing the sewer was that of contractee and independent contractor. Respondent does not contend the relation was any other, and our attention has been called to nothing in the contract which discloses anything warranting a different conclusion.

The evidence tends to show the plans disclosed it would be necessary, in the construction of the sewer, to remove large quantities of rock, and tends to show that, in the circumstances, the only practical method of removing such rock involved blasting operations, and that dynamite was customarily employed for such purpose, being the safest explosive available therefor. It further tends to show the contractor had installed in a shed erected in Canterbury Avenue, near appellant's residence, a gasoline engine, equipped to operate an air-compressor, a device employed in drilling into the rock in preparation for blasting; that a small gasoline tank was connected with the engine and directly supplied it with fuel, while a larger tank, containing a reserve supply of gasoline, was placed a few feet from the engine; that dynamite, in a box or boxes, once or twice previously had been seen in the same shed. There was also evidence that one of appellant's policemen two days before the explosion had observed a box marked "dynamite" just outside of the shed; and that boxes simi larly labeled had once before the explosion been seen in the shed, and at least one box containing dynamite was seen in the shed about an hour before the explosion; that just before nine o'clock A. M., November 18, 1910, the shed mentioned was observed to be on fire and soon thereafter there was an explosion which demolished the shed, destroyed the large gasoline tank, broke the muffler of the engine, created a hole in the ground about two feet deep and four or five feet across, broke an iron pipe and injured dwellings for several blocks

around, shattering glass five or six blocks away. There was evidence strongly tending to explain or contradict that upon which the above statement is based, but the finding for respondent is taken as settling the conflict. Other facts may be detailed in the course of the opinion.

I. Appellant contends respondent failed to show whether the explosion was one of dynamite or gasoline vapor, and invokes the rule that when the evidence discloses two independent causes of injury, for one of which a defendant is liable and for one of which he is not, it is incumbent upon the plaintiff to show that the cause for which the defendant is liable produced the result. Typical cases cited are Warner v. Railroad, 178 Mo. l. c. 134, and Fuchs v. St. Louis, 167 Mo. l. c. 635.

**Independent Causes.**

(a) That rule imposes upon a plaintiff, so far as any question of law is concerned, the duty of offering substantial evidence tending to show that the cause for which defendant is liable produced the injury. The trier of the facts, under proper instructions, passes upon the question of fact involved just as upon any other such question, and the quantum of evidence necessary to sustain a finding thereon differs not at all from that required on other issues of fact. We can no more weigh conflicting evidence on such an issue than on any other.

(b) Even if appellant's apparent view, that this court will weigh the evidence on this issue, were correct, we have no hesitancy in saying that the record discloses the evidence preponderates in favor of the conclusion that there was an explosion of dynamite.

II. The sewer was being constructed by an independent contractor. The evidence justified a finding (which we must assume was made) that the character of the work contracted for necessitated blasting. The damages sued for did not result from firing blasts and no question respecting the city's obligation to require proper

**Liability for Explosion.**

precautions, in that particular process, is involved. Explosion of dynamite in the street gave raise to this case. Blasting being necessary, the use of explosives must have been foreseen by the city, but such use is lawful; and having in readiness, near the work, dynamite in proper quantities for use in blasting is neither necessarily nor so palpably dangerous, when managed in the ordinary way, as to constitute a thing inherently dangerous. If, therefore, the explosive so held in readiness becomes, in the circumstances of a particular case, a nuisance by reason of the contractor's negligence of method, without more, provided the contractor is not incompetent, he alone is liable. [Cuff v. Railroad, 35 N. J. L. l. c. 22.]

III. Is the city liable for failure to put an end to the use of the street in the manner which resulted in the damages sued for?

(a) The trial court was justified in finding, and we assume it did find that at the time of the explosion there were fifty or a hundred pounds of dynamite in the shed; that the neighborhood was populous, and **Explosion of Dynamite in Shed: Negligence in Storing.** that in the shed, constructed of pine boards, was a gasoline engine equipped with a gasoline supply tank beneath it, and that in the same shed there was a large separate gasoline tank which was partially empty—which condition usually results in the formation of an explosive mixture of air and gasoline vapor; that attached to the engine was a muffler which might "back fire" with some violence; that at the time of the explosion several sticks of dynamite had been left near the muffler, probably for the purpose of thawing them, the weather being cold.

These facts, if found, taken most strongly against appellant, warranted the conclusion that the contractor had created a nuisance in the street. "In determining the question [whether or not a nuisance] the locality, the quantity and manner of keeping will all be considered, as well also as the nature of the explosive and its liability to accidental explosion." [1 Wood on Nuisances, sec. 140.] In some cases, negligence of a character to make

that a nuisance which otherwise would be lawful may appear in the attending circumstances; therefore, after an explosion, when deciding whether or not a public nuisance existed in connection with the storage of the material which exploded, the question of the manner in which it was kept—whether negligently or otherwise— may enter into the consideration; but when it is once determined upon sufficient evidence that such a nuisance was maintained, then no particular causal act of negligence directly contributing to the explosion need be shown; it is sufficient to prove facts which justify the finding of a public nuisance, and when the explosion is a thing that could naturally flow therefrom, then, since that possibility is one of the very elements which go to make up the nuisance, in the absence of testimony to the contrary, the explosion will be assumed to have followed as a result thereof. If the "place and manner of keeping the quantity and kind of dynamite here involved, considering its liability to explode (according to the facts in that particular as the jury may find them), created a danger beyond that which *ex necessitate* always attaches to the lawful possession of such a material, and that this danger amounted to a menace to life and property in the neighborhood, then they properly could determine that the defendants had maintained a public nuisance which resulted in the destruction of plaintiff's building, and bring in their verdict accordingly, even though no particular act of negligence directly responsible for the explosion were shown." [Forster v. Rogers Bros., 247 Pa. l. c. 59, 60.]

Waiving for the moment the question whether there was any evidence of such "storing" and "keeping" of dynamite in the shed, we shall assume a finding bringing the case within the rule quoted.

(b) The rule that a city is liable to persons lawfully using the streets for injuries resulting from nuisances which, with notice, it suffers to continue therein, even though created by its independent contractor, is not applicable to the facts of this case, since the damages sued for were not inflicted upon any one using the street as

———: Nuisance on Private Property.

a way. A city ordinarily is not liable for failure to abate a nuisance upon property of a private owner, no injury to users of the street being threatened, since that is but a failure to exert a governmental power. On the other hand, a city ordinarily is liable for damages from a nuisance created and maintained by it upon property owned and controlled by it in its private capacity.

(c) The question in this case is whether the city is liable to an owner of property, adjacent to a street, for damages resulting from a nuisance created by another in ———: In the street. The fact that the person creating Work for the nuisance in this case was a contractor en-City. gaged in work for the city has nothing to do with the actual question to be decided. Is the character of the city's control over its streets such that it owes to owners of adjacent property a duty to abate nuisances in the streets like that an individual owes with respect to the abatement of such nuisances on his own land? Or is its obligation one due only to users of the street, and is its duty to adjacent owners comparable only to its duty with respect to nuisances upon private property and of such character, with respect to adjacent owners, as to call merely for an exercise of governmental power, a failure to exert which imposes no liability? The decisions almost invariably have to do with injuries to users of the street. With respect to them, the city for injuries resulting from its sufferance, with notice, of a nuisance in the streets, is liable because of its duty to keep its streets in reasonably safe condition for use by persons who, in the exercise of ordinary care, travel upon them. It is obvious this rule is not broad enough to solve the question in this case. No decision has been called to our attention which has sustained a recovery on facts like those in this case.

In Smyth v. New York, 203 N. Y. l. c. 111, the city was held not liable for damages resulting from the explosion of an excessive amount of dynamite *kept* by contractors in a city street, without proper precautions being taken to prevent an explosion. It was held the street, in

that case, was not under the city's control, having been withdrawn therefrom, and also held that the city had no notice of the storing of an excessive amount of explosives. In this case the city had the usual control of the street except in so far as it was in actual use and occupation by the contractor in prosecuting the contract work. In this case there was no substantial evidence that there was any habitual storing of dynamite in the shed. Sufficient notice to the city cannot be implied from the mere fact that dynamite was seen in the shed about fifteen minutes, perhaps an hour, before the explosion occurred. The contractor had, distant from the shed, a place prepared for keeping dynamite in quantities appropriate and adequate to meet its need of the explosive as the blasting progressed. This quantity was replenished about every other day. No injury resulted from this. Notice of this fell far short of notice there was dynamite in the shed. Two days before the explosion a police officer saw a box marked "dynamite" *outside* the shed and saw a workman, at another time, take a few sticks of it into the shed and bring a few sticks out of it. Whether the box the officer saw contained dynamite, or anything at all, he did not pretend to know. The evidence shows no habitual keeping of dynamite in the shed and, except as to the morning of the explosion, does not show at all satisfactorily that there was dynamite there. The knowledge of a police officer that a box whose contents are unproved, two days before the explosion, stood for a little time *outside* the shed, and that at another time a workman carried a few sticks of the explosive into the shed and carried a few sticks out of it does not, in our opinion, justify an imputation to the city of knowledge that dynamite in dangerous quantities was habitually stored *inside* the shed. Lacking notice, the city cannot be held in this case on the ground that it suffered the maintenance of a nuisance in the streets. The question whether the evidence tends to show a nuisance was maintained need not be further considered. The judgment is reversed.

PER CURIAM:—The foregoing opinion is adopted as the opinion of the Court in Banc. *Graves, C. J., Walker, Faris* and *Williams, JJ.,* concur; *Bond* and *Woodson, JJ.,* dissent.