CITY OF SPICKARDSVILLE, Missouri, a municipal corporation, Plaintiff and Appellant,

v.

D. K. TERRY, Eula Terry, and D. T. Thatch, Defendants and Respondents,

E. W. Ewing, Mettie Ewing, F. A. Wilson, Edith Wilson, Estella Vaughn, D. G. Dennis, Teressa Dennis, T. H. Keith, Mary Keith, C. E. Clemens, Mettie Clemens, N. J. Young, Myra Young, Ralph Wooderson, and Pearl Wooderson, Intervenors and Appellants.

No. 22111.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1954.

Herbert S. Brown, Trenton, for plaintiff-appellant and intervenors-appellants.

J. P. Morgan, Chillicothe, for defendants and respondents.

CAVE, Presiding Judge.

This is a suit seeking to enjoin the defendants from erecting and maintaining two steel tanks above ground with a total storage capacity of 9,000 gallons of gasoline. Upon the filing of the petition, a temporary restraining order was issued, and when the case was tried on the merits, that order was dissolved and judgment entered for the defendants. Plaintiff and intervenors appealed.

The City of Spickardsville, a city of the fourth class, filed a petition to enjoin the defendants from the erection and maintenance of such storage tanks because they would endanger the public health and safety and constitute a public nuisance. Thereafter, certain individuals, who owned property in the immediate vicinity, were permitted to file a petition as intervenors. They allege that the construction and maintenance of the tanks, under all the circumstances, constitutes a private nuisance. Both petitions seek injunctive relief. The answer was in the nature of a general denial and specifically denied that the tanks would create a hazard or be a public or private nuisance, and that if an injunction was made permanent it would be an unreasonable restriction upon a legitimate and necessary business under the customs of modern day modes of supplying gasoline to the public.

This being an equity case, the cause is heard de novo on appeal. We must weigh the evidence and make our own findings on the law and the facts, with due consideration for the findings of the trial chancellor. Ulrich v. Zimmerman, 349 Mo. 772, 163 S.W.2d 567, 571; Clinic & Hospital, Inc., v. McConnell, Mo.App., 236 S.W.2d 384, 23 A.L.R.2d 1278.

We have carefully read the transcript and find very little conflict in the material facts. The general situation may be stated as follows: Spickardsville is a city of the fourth class, with a population of approximately 600; that defendants D. K. Terry and wife are the owners of lots 2 and 3 in block 4 of said city; that they have operated a gasoline filling station, from underground tanks on this property, for the past 22 years; that at the time of the filing of this suit, defendant Thatch was their lessee; that the defendants were erecting on these lots two steel tanks, above ground, with a total capacity of 9,000 gallons of gasoline and intended to use the same for the storage of gasoline as a reserve supply for their filling station; that the tanks were located about 50 feet from the underground tanks at the filling station and were connected therewith by pipes located on the surface of the ground; that the tanks are about 500 feet from the main business district of Spickardsville and 51 feet from the center of Highway 65, which is the main street of the town and on which most businesses are located; that the homes of the individual intervenors are constructed of lumber, and are from 57 feet to more than 200 feet from the tanks; and that the public school is about 500 feet away.

The testimony of the intervenors may be summarized as follows:

Dr. E. W. Ewing testified that he was a practicing physician in Spickardsville; that he and his wife live in a house across a street and 57 feet from the tanks; that Spickardsville has a two-wheeled cart with hose as the only fire fighting equipment.

"Q. Has the fact that these tanks are erected on the Terry filling station interferred with yours and your wife's enjoyment of your home? A. Not necessarily.

"Q. What do you fear about the tanks? A. Just fear in regard to the danger of it, I rather consider it a hazardous condition. * * *

"Q. You don't object to it as an eyesore there? A. No."

Mr. Wilson testified that the tanks are located about three blocks from the business district of Spickardsville and in a residential section; that he and his wife live in a house across the street and 87 feet from the tanks.

"Q. Has the fact that these storage tanks are close to your home bothered you somewhat in the enjoyment of your home? A. Not necessarily; but it is a fire hazard.

"Q. And that does bother you? A. That's right.

"Q. You feel it endangers your home to a certain extent? A. Yes, sir."

Mrs. Vaughn testified that she lived in a house across Highway 65 and 95 feet from the tanks.

"Q. Have you felt a little concerned since they (tanks) were erected? A. Yes, sir.

"Q. Tell the court what your concern is for, what you feel you are afraid of. A. That they might cause a fire sometime."

Mr. Dennis testified that he and his wife lived in a house across highway 65 and 84 feet from the tanks.

"Q. Have these storage tanks caused you to fear a fire, some danger to your property? * * * A. Yes.

"Q. And that is why you are over here today asking the court for this injunction? A. Yes, sir."

Mr. Clemens testified that he and his wife lived in a house approximately 140 feet from the tanks.

"Q. Have you felt a little concerned about these storage tanks up there? A. Yes.

"Q. What are you concerned about? A. If it would explode, of course those other houses would burn and mine would burn too * * *."

Mr. Young testified that he and his wife lived in a house one block east and on the opposite side of the street from the tanks.

"Q. You feel concern as a lumberman and a resident up there as to what could occur if these tanks are used? A. For my neighbors, yes, not for myself. I don't think it would damage my property.

"Q. But you are a little farther away than these other people? A. Yes."

Mr. Wooderson testified that he owns and operates a garage in the business section of Spickardsville; that the Terry tanks are four or five hundred feet from the business district; that there is a blacksmith's shop and another filling station about two blocks from the tanks; that he and his wife live in a house about 250 feet from the tanks.

"Q. You feel some concern up there about this storage tank? A. No, I never have because I am too far away.

"Q. It is not bothering you personally? A. Not me." He also testified that there were four or five other aboveground tanks located about 100 feet west of his garage but that they were not being used to store gasoline at that time and he did not know who owned them.

Mr. Keith testified that he was city attorney and city clerk of Spickardsville; and that he lived one block from the tanks.

"Q. If these tanks were filled with gasoline would that cause you and your wife some concern? A. Causes her some concern. I don't pay much attention to it myself, but she does.

"Q. Feels it is a fire hazard to the neighborhood? A. Yes."

Alfred Benberg testified as an expert witness for the appellants. Summarized, his testimony is to the effect: That he had inspected these tanks and that they were made of 12 gauge metal; that the top and bottom were not steel plate; that $\frac{3}{16}$th inch is the standard thickness of material for use on the sides and bottom of gasoline

tanks of this size; that the top of such tanks should be lighter, 10 gauge or ⅛th inch steel plating, so that in case of an explosion, the explosion would blow upwards, instead of out through the sides; that, in his opinion, these tanks were not ³⁄₁₆th of an inch thickness on the side or bottom; that gasoline is an extremely inflammable liquid and when stored in large quantities creates a hazard; that gasoline gives off a vapor which is not easy to detect, and such vapor is heavier than air and follows the ground, unless carried away by a breeze; that the tanks are located on a slightly higher level than the filling station and some of the residences and that if vapor emits from the tanks it will seek a lower level of terrain, and that such a situation creates a hazard; that the pipes connecting the aboveground tanks with the underground tanks at the filling station are laid on top of the ground and that such pipes will expand and contract with the change of temperature; that the pipes were connected with screw fittings instead of welding, and such a situation might cause gasoline to escape from the pipes; that these pipes might be damaged by a person stepping on them; that above ground tanks are more hazardous than underground tanks, but admitted, on cross examination, that fumes must escape from underground tanks through vents the same as aboveground tanks, but that the leakage of gasoline from underground tanks is not as dangerous as leakage from aboveground tanks because the gasoline is absorbed into the earth; that it is not customary in the petroleum industry to place aboveground tanks in a congested residential area; that if the gasoline in these tanks should explode or catch on fire, it would endanger the surrounding residences; that a chemical is required to extinguish a gasoline fire; that water simply spreads the fire; that since the city of Spickardsville has no such chemical extinguishers, and very limited fire equipment, an additional hazard is created. On cross-examination, he admitted that the storage of gasoline in large quantities is always a hazard whether it be located above or below ground.

Defendants' evidence: Defendant Terry testified that for 22 years, he had owned and operated a gasoline filling station in Spickardsville on the same lots involved here, without complaint from anyone; that there were two 550 gallon tanks underground at the filling station; that such amount is not sufficient to meet the demands of his trade; that he purchased his gasoline wholesale from John Rupp of Chillicothe; and that Rupp furnished and was installing the two tanks in issue; that the tanks are located 21 feet from the right of way of highway 65, and the highway engineer approved the location.

John Rupp testified that he lives in Chillicothe, Missouri, and sells gasoline wholesale and retail; that the defendants are his customers; that he purchased the two tanks from Ed Faster Equipment Company of Kansas City, and they were manufactured by American Steel Corporation; that the capacity of one tank was 5,260 gallons and the other was 3,760 gallons; that the tanks are his property; that he employed an experienced man to erect the tanks; that he owns a hundred or more such storage tanks in his trade territory (north Missouri), and that most of them are located within corporate limits of towns and villages and above ground. He admits that gasoline is very volatile.

"Q. It would blow up under certain circumstances? A. Under certain circumstances, yes.

"Q. How do you offset that? A. By proper handling and safety devices.

"Q. And that is what your equipment has? A. That's what my equipment has." That the connecting pipes were placed on top of the ground because "a leak" is more easily discovered and repaired under such conditions; that his employees would inspect the tanks and pipes every two or three days.

David Smart testified that he was vice president of the American Steel Works, a corporation, which manufactured the tanks at issue; that they are made of "hot rolled

steel * * * and welded"; that they are equipped with "vent openings as required by the underwriters * * * for contraction and expansion * * *"; the larger tank is 8 feet in diameter and 14 feet in height "with a 10-gauge bottom, 12-gauge sides and 14-gauge cover", with a capacity of 5,260 gallons; that the smaller tank has a 10-guage bottom, a 12-gauge shell and a 14-gauge cover and has a capacity of 3,760 gallons; that the bottom and shell of the tanks are "a fraction over ⅛th inch in thickness"; that the specification of an "underwriter labelled tank" is "the minimum thickness of shell or bottom shall be ³⁄₁₆th inch"; that the tanks in dispute do not meet "the specifications of underwriters labelled tanks * * * there are very few of the labelled tanks made"; that the manufacturer tests these tanks by dropping them a distance of 30 feet and if there is no rupture they are considered safe.

"Q. Could a boy passing by a tank make a hole in that tank with a hammer? A. No."

He also stated that his company had manufactured about 100 of these tanks each year since 1924; that about 60% had been erected above ground and none had "blown up".

Edwin Faster testified that he was employed by the Wayne Fastock Equipment Company, a jobber, which sells gasoline tanks and service station pump equipment; that his company sold the disputed tanks to John Rupp; that they are the same type that his company is selling in Missouri and Kansas; he identified a certain portion of the rules and regulations of the State Oil Inspector, which is to the effect that the storage of gasoline in aboveground tanks creates a danger from fire and explosion and "for this reason aboveground storage tanks of large capacity should, so far as possible, be located away from the congested portion of communities."

From an examination of photographic exhibits, it appears that these tanks are enclosed by a substantial wire fence and that there is a much used street between the tanks and the home of Dr. Ewing, whose residence is nearest the tanks.

■ Of course, gasoline is a highly inflammable liquid and when stored in large quantities creates a danger of possible explosion or fire if ignited, and should be stored under conditions which will reasonably protect the public safety. But with modern day transportation depending so heavily upon the availability of gasoline, it cannot be expected that its storage will be limited to uninhabited areas.

The appellants do not complain that the tanks are unsightly; that their location will affect the market value of their property; or that noxious fumes or loud and disagreeable noises will result from such location. The only element of concern claimed is the danger from possible fire or explosion.

■ The rule in this state is that the mere storage of a large quantity of gasoline is not a nuisance per se; other factors must be considered. Harper v. Standard Oil Company, 78 Mo.App. 338; Buchholz v. Standard Oil Company, 211 Mo.App. 397, 244 S.W. 973; Greene v. Spinning, Mo. App., 48 S.W.2d 51. For a complete review of recent decisions on this question, see 124 A.L.R., page 383; and 24 Am.Jur., page 614, Sec. 128; 11 R.C.L., page 660, Sec. 11.

In the Harper case, supra, it is said, 78 Mo.App. 344: "The tanks (aboveground) in question were used for the storage of gasoline and coal oil. While their contents are inflammable, they are not spontaneously combustible, and can only be ignited by extrinsic agencies. * * * It is not believed any well-considered case holds that the storage of gasoline and coal oil in suitable tanks constitutes a nuisance per se. Things which are not in themselves nuisances can only become such by some neglect in the manner or locality of their use, * * *. There is no evidence in this record showing that in constructing the tanks complained of it (defendant) did anything calculated to excite just apprehension of fire in the minds of persons of normal nervous sensibility." These tanks were 75 feet

from plaintiff's home and 50 feet from railroad tracks.

In the instant case, the tanks are enclosed by a substantial wire fence; they are not in close proximity to the filling station and garage where automobiles and trucks are brought for service; they are erected at a point where the public has no right to be, and are constructed of substantial steel, with modern safety devices. The homes claimed to be endangered are across a street or highway 65. We are of the opinion that the evidence does not support any reasonable basis for fear from fire or explosion.

The general rule is that mere fear or anticipation of a nuisance is insufficient to warrant the extension of equitable relief by injunction. It is necessary, in order to restrain future acts with respect to the construction or maintenance of gasoline or filling stations, upon this theory, to allege and prove facts which show, with reasonable certainty, that such results would be likely to follow. 124 A.L.R., page 385.

One of the leading cases discussing the storage of gasoline in aboveground tanks is Pennsylvania Company, etc., v. Sun Company, 290 Pa. 404, 138 A. 909, 910, 55 A.L.R. 873. In that opinion the court makes the following observations: "In this age, persons living in a community or neighborhood must subject their personal comfort to the commercial necessities of carrying on trade and business. * * * One thing is quite certain, equity will not interfere, unless its right to do so is free from doubt. * * * The wrong or injury resulting from the pursuit of a trade or business must be plainly manifest or certain to follow. * * * Of course, petroleum and its by-products, under the circumstances here existing, are readily ignited; but will they be ignited? Is that likely? Does common experience show it? Is the manner of use as described such that the probabilities are that they will be? The words 'readily' and 'susceptible' are words of anticipation, apprehension, or mere fear, or, as the authorities say, doubtful, eventual, or contingent. The statement that the use becomes a menace is but a conclusion based on these antecedent conjectures." We think that language is particularly applicable to the facts now under consideration.

In support of their contention that the evidence proves that the two tanks in controversy create a public and private nuisance, appellants cite: State ex rel. Hopkins v. Excelsior Powder Manufacturing Co., 259 Mo. 254, 169 S.W. 267, L.R.A. 1915A, 615; State ex rel. Crow v. Canty, 207 Mo. 439, 105 S.W. 1078, 15 L.R.A.,N.S., 747; Whittemore v. Baxter Laundry Co., 181 Mich. 564, 148 N.W. 437, 52 L.R.A., N.S., 930; Buchholz v. Standard Oil Company, 211 Mo.App. 397, 244 S.W. 973; Holman v. Clark, 272 Mo. 266, 198 S.W. 868; McGuffey v. Pierce-Fordyce Oil Ass'n, Tex.Civ.App., 211 S.W. 335; Biggs v. Griffith, Mo.App., 231 S.W.2d 875; Lademan v. Lamb Construction Co., Mo.App., 297 S.W. 184.

Since we conclude that the evidence does not require a finding of a nuisance, we need not discuss the distinction between a public and private nuisance. We have read appellants' citations and will not extend this opinion by distinguishing each case. In general the distinguishing feature is that in most of those cases, the element of negligence in the manner of handling or a continuous conduct of operation combined with the storage of gasoline or explosives was the determining fact justifying the conclusion that a nuisance existed. The observations were made in retrospect and after actual damage had been suffered by those seeking relief. However, that distinction does not apply to the Michigan case of Whittemore v. Baxter Laundry Co., supra. In that case the two tanks had a capacity of 20,000 gallons of gasoline and were located within 11 feet of plaintiff's house with no street or barrier intervening. The trial court found that a nuisance existed and the supreme court affirmed that action. In the instant case the trial court found that a nuisance did not exist and, while we are not bound by that finding, we think it is correct under the facts.

The universal rule is that injunctive relief is one that appeals to the sound discretion of the court, and is to be applied with the utmost caution and be exercised with great discretion, and only when necessity requires. This rule is particularly applicable when it is sought to enjoin a person from the use of his property in a legitimate business.

We think the trial court reached the right conclusion. The judgment is affirmed.

All concur.