[S. F. No. 2419.   In Bank.—February 14, 1903.]

## FREDERICK KLEEBAUER and LISETTA KLEEBAUER, his Wife, Respondents, v. WESTERN FUSE AND EXPLOSIVES COMPANY, a Corporation, Appellants.

STORAGE OF GUNPOWDER BY FUSE FACTORY—NUISANCE—ABSENCE OF NEGLIGENCE—UNLAWFUL ACT OF THIRD PERSON—ERRONEOUS INSTRUCTION.—The storage of gunpowder in a powder magazine for use in the manufacture of fuses, in a place properly selected, is not a nuisance *per se;* and in an action for damages for explosion of the gunpowder so stored by the defendant, where no negligence was shown, it was error to give an instruction to the jury making no distinction between the use and manufacture of the powder, nor any exception to the rule where a secluded situation was selected, and others were afterwards attracted to the locality, and making the defendant liable, notwithstanding the exercise of the greatest care, and notwithstanding the explosion and damage were caused by the unlawful act of a third person entirely beyond the control of the defendant. In such case the defendant is not responsible.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   W. R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Wright & Lukens, for Appellant.

The unlawful act of a third person was the proximate cause of the explosion and damage, and defendant is not responsible. The intervening act of a third person, not intended by the defendant, and acting independently, from which injury re-

sults, is the proximate cause thereof, notwithstanding the prior action of the defendant, as a *causa sine qua non.* (*Barton* v. *Pepin County Agricultural Soc.,* 83 Wis. 19; *Mahogany* v. *Ward,* 16 R. I. 479; [1] *Burt* v. *Advertiser Newspaper Co.,* 154 Mass. 238; *Goodlander etc. Co.* v. *Standard Oil Co.,* 63 Fed. 400.)

Reddy, Campbell & Metson, for Respondents.

The maintenance of the gunpowder where it was likely to cause great injury by explosion, amounted to a public nuisance. (*Myers* v. *Malcom,* 6 Hill, 292; [2] *Cheatham* v. *Shearon,* 1 Swan, 213; [3] *Heeg* v. *Licht,* 80 N. Y. 579; [4] *McAndrews* v. *Collerd,* 42 N. J. L. 189; [5] *Chicago etc. Coal Co.* v. *Glass,* 34 Ill. App. 364; *Wilson* v. *Phœnix Powder Co.,* 40 W. Va. 413; *Hazard Powder Co.* v. *Volger,* 58 Fed. 152; *Laflin and Rand Powder Co.* v. *Tearney,* 131 Ill. 322; [6] *Wier's Appeal,* 74 Pa. St. 230; *White* v. *Colorado Ry. Co.,* 5 Dill. 428; *Emory* v. *Hazard Powder Co.,* 22 S. C. 476; [7] *Comminge* v. *Stevenson,* 76 Tex. 642; 1 Wood on Nuisances, 5th ed., sec. 69, and notes.)

VAN DYKE, J.—This is an action for damages. It is alleged in the complaint that defendant was at the time, and prior to the nineteenth day of July, 1898, engaged in manufacturing and storing powder, dynamite, nitroglycerine, and other high explosives and fuses on its premises near Melrose, in Alameda County, and that, by reason of the negligence and carelessness of the defendant, a large quantity of fuse and explosives belonging to it, and under its control, on said day exploded with great violence, whereby plaintiffs' house was injured and damaged to the extent of four hundred dollars, for which amount damages are claimed. The answer denies that the defendant was engaged in the manufacture or storage of powder, dynamite, nitroglycerine, or other high explosives, but admits that it was the owner of and operating a factory for the manufacture of fuse on its premises; and denies that, by reason of the premises mentioned in the plaintiffs' com-

[1] 27 Am. St. Rep. 753.
[2] 41 Am. Dec. 744, and note.
[3] 55 Am. Dec. 734.
[4] 36 Am. Rep. 654.
[5] 36 Am. Rep. 508.
[6] 19 Am. St. Rep. 34.
[7] 53 Am. Rep. 730.

plaint, or by reason of any negligence or carelessness on the part of the defendant, plaintiffs have been, or ever were, damaged in any sum whatever.

The action was tried in the superior court of San Francisco, before a jury, and resulted in a judgment for the plaintiff, from which and an order denying defendant's motion for a new trial an appeal was taken.

There seems to be not much conflict in reference to the facts of the case. In July, 1898, at the time of the explosion, and for over ten years prior thereto, defendant corporation was carrying on the business of manufacturing fuse near San Leandro Bay, in the county of Alameda, near a station called Melrose. There were other fuse works there besides that of the defendant, and there were in the vicinity dwelling-houses scattered here and there about the manufactory. The place was platted in streets, but there were only two roads or ways through the vicinity. One was called High Street, the other Clark Street. In the testimony of witness Clark, a civil engineer, he says: "High Street is open and macadamized. Clark Street is a road that is in pretty fair condition only,— that is, simply open,—and a wagon might go through it by picking out the better places." It is outside of the limits of both Oakland and Alameda, and within the township of Brooklyn. The company's grounds contained about an acre and a half. A tight board fence, six feet and over in height in the lowest place, and six feet seven inches in the highest, with a run of barbed wire on top, inclosed the buildings in which the company carried on its operations. One of these buildings was a powder-magazine. This was a brick structure, about fourteen by sixteen feet, and eight or ten feet high, covered with metal, and the floor lined with thick linoleum, and was situated in the corner of the inclosure, and in another corner was the residence of the superintendent. The powder used in the manufacture of fuse is ordinary black powder, kept in round metal cans. The company did not manufacture the powder, but it was brought on the premises and stored in the magazine, to be used as required in the manufacture of fuse. The gunpowder was taken from the magazine to a loft or upper story of another small building, and thence poured into small tin hoppers, funnel-shaped, with an orifice leading through the floor to the room below. Each

orifice has a thread drawn through it, and as the thread which thus passes through the gunpowder in the hopper leaves the funnel in the room below, it is wound with other threads and twisted so that it becomes the center thread of the twist. Afterwards this twist is covered with tape and becomes a ropelike fuse, used for the purpose of conveying a spark from a distance to the explosive in blasting operations.

The superintendent of the company in his testimony says that the works were located near the slough running into San Leandro Bay, and that within one hundred feet of the works it was all marshy to San Leandro Bay. In the vicinity of the fuse works there were fields under cultivation. The plaintiffs went there and built their house over five years after the defendant company had been in operation, and it does not appear from the evidence whether, at the time the defendant located there and commenced its business, there were any residences or other buildings in the vicinity, but at the time of the explosion there was quite a number of buildings in the neighborhood.

About three o'clock in the afternoon of the 18th of July, 1898, a quarrel arose between a Chinaman named Quong Ng Chong and another Chinaman within the inclosure in which the company's works were situated. Quong Ng Chong had for many years been employed by the company. His business was to go to the magazine and bring the powder over to the spinning-room whenever it was necessary. He was a man of good reputation for peace and quiet. The Chinaman with whom he quarreled was a vegetable dealer who sold vegetables to the men employed in the fuse works. Quong Ng Chong suddenly killed him, and after perpetrating the murder, taking advantage of the excitement caused, he fled into the magazine. He then piled in the doorway of the magazine a number of the metal cans in which the gunpowder was kept, and by that means filled up the doorway of the magazine while he remained inside. He then announced that if any sheriff, policeman, or other person attempted to arrest or take him he would set fire to the gunpowder. The sheriff of Alameda County and several deputies promptly arrived at the fuse works to arrest the murderer. The afternoon was spent in vain endeavors to induce the Chinaman to come out of the magazine, but he had a pistol, and declared he had

matches, and he could not be induced to leave. Late in the evening the employees of the company left the place in charge of the sheriff and several armed deputy sheriffs. They remained on guard during the night. About five o'clock next morning, in consequence of an attempt then made to arrest him, the Chinaman carried out his threat and set fire to the gunpowder. The magazine exploded, destroying defendant's factory, killing some of the deputy sheriffs, and injuring the dwelling-house of the plaintiff in this action.

In submitting the cause to the jury the court gave the following instruction, among others: "A magazine of powder so situated that, in case of explosion from any cause, it is liable to injure the persons and the dwellings of persons living in the vicinity, is a nuisance; and, therefore, if the jury believe from the evidence that the defendant corporation maintained at the time mentioned in the complaint, at the town, or village, or place called Melrose, a magazine, and kept stored therein large quantities of gunpowder, which, in case of explosion, was liable to injure the persons, dwellings, or other property of the residents of the said town, or village, or place called Melrose, your verdict should be for the plaintiffs. Although the jury may believe from the evidence that powder in the magazine in question was exploded by an agency beyond the control of the defendant corporation, still this would not exempt the defendant corporation from liability, provided the jury believe from the evidence that said magazine was maintained by such defendant corporation in such a place that, in case of an explosion, it was liable to injure, damage, or destroy the persons or property of persons living in the vicinity. . . . The fact, if it be a fact, that defendant's magazine and factory were located and built at Melrose before plaintiffs' house was built, has no bearing on this case. Such circumstances can in no way excuse the maintenance of a nuisance, and the question of whether the magazine and factory of the defendant was a nuisance must be solved without any reference to the location of defendant's factory and magazine." The court also either refused defendant's instructions or modified them on the line of the foregoing.

Although the complaint alleges that the damage was caused "by reason of the negligence and carelessness of the defendant," there is not a particle of evidence to support such alle-

gation, and that theory of the action seems to have been abandoned by the plaintiffs during the trial. Under the instructions of the court there were no facts for the jury to consider, for the reason that there was no question but that powder was stored in a magazine or place where, in case of explosion, it would be liable to injure or damage persons or property. The doctrine laid down by the court in the instructions, in substance, declared the business of the defendant, under the circumstances, a nuisance *per se,* and made it an insurer against all damage arising from whatever cause.

It will be observed in this case the plant in question was not devoted to the manufacture of explosives. The only risk attendant upon the business was that risk inseparable from any handling or storing of powder—the same risks that accompany its transportation, sale, use, and application in all the various circumstances in which it is availed of. By the court's instruction there is no distinction between a case of the use and manufacture of this explosive, nor any exception to the rule in a case where a secluded situation is sought in the first instance, and thereafter others are attracted to the locality, perhaps by the very fact of the business of the factory; and by such instruction the defendant is made liable, notwithstanding that the greatest care and prudence may be used in the transaction of the business, and that the explosion or damage is caused by some agent entirely beyond the control of one conducting the business. This is not the law. In *Judson* v. *Giant Powder Co.,* 107 Cal. 549,[1] the damages for which the action was brought were occasioned by an explosion of nitroglycerine in process of manufacture into dynamite in the defendant's powder factory. In that case the judgment for plaintiff was sustained by this court on the ground that the damage resulted from negligence, the court holding that, the explosion having been shown, it was for the company to show by evidence that it was not the result of negligence or carelessness on its part, which it failed to do. Quoting from Shearman and Redfield on Negligence (sec. 60): "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable

[1] 48 Am. St. Rep. 146.

evidence, in the absence of explanation, by the defendant, that the accident arose from a want of care.'' The court continuing, says: ''This case seems to clearly come within the provisions of the rule there declared. There is nothing to distinguish it in principle from the army of cases that have been held to come directly within its provisions. Appellant was engaged in the manufacture of dynamite. In the ordinary course of things, an explosion does not occur in such manufacture if proper care is exercised. An explosion did occur; *ergo,* the real cause of the explosion being unexplained, it is probable that it was occasioned by a lack of proper care.'' Respondent relies upon *Cheatham* v. *Shearon,* 1 Swan, 213,[1] in support of his theory that the business in question here was a nuisance *per se.* In *Dumesnil* v. *Dupont,* 18 B. Mon. 800,[2] the supreme court of Kentucky says that the only adjudged case met with in which the principle that a powder magazine is a nuisance *per se* seems to have been definitely settled is that of *Cheatham* v. *Shearon;* and adds that ''the principles and reasoning on which the decision rests are opposed to the unbroken current of modern authority, English and American, upon this subject.'' In *Kinny* v. *Koopman,* 116 Ala. 310,[3] it is said: ''The storing or keeping of gunpowder or dynamite in large quantities near the dwelling-houses of citizens in a thickly settled portion of the town, and near a certain public street in said city, is not a nuisance *per se;* and to constitute such a nuisance there must be negligence or want of due care in storing and keeping it.'' And in the same case it is said: ''After a most careful examination of the common-law text-books and decisions, we have no doubt of the correctness of our conclusion in the foregoing cases, and which exactly accord with the law as declared in *People* v. *Sands,* 1 Johns. 78.[4] Steam-power, gas, electricity, dynamite, and gunpowder are in daily use, and have become indispensable to the convenience of the public and for the public defense. Invention of man and advancement in science have enabled the manufacturer of, or dealer in, these articles to provide the public or the individual with almost, if not altogether, absolute protection against danger or hurt from explosion. And even had the manufacturing and storage of gunpowder, in its early history, been a nuisance at common

[1] 55 Am. Dec. 734.
[2] 68 Am. Dec. 750.
[3] 67 Am. St. Rep. 119, and note.
[4] 3 Am. Dec. 296.

law, the common-law definition of a nuisance would not include gunpowder at this day." In *Tuckachinsky* v. *Lehigh etc. Co.,* 199 Pa. 515, a similar case was considered. In that case, at the time of the accident, the defendant had four and a half boxes of dynamite and four and a half kegs of black powder in a wooden building fourteen feet square and twelve feet high, in an open space near the shaft of its colliery. The mine was not in operation at the time, but some deadwork was being done, in which powder was necessary. The plaintiff was standing in the doorway of her father's house, and was thrown backwards down a flight of stairs by the concussion of the air, receiving injuries for which damages were sought. The explosion was caused by lightning.

The trial court in its instructions to the jury stated that there was no evidence in the case of any "negligence on the part of the defendant, unless it consisted in having the kind and quantity of explosives in the place at the time, for the purpose, and under the circumstances already stated. As to this there is no controversy, no dispute, no question of fact to be determined. The only question to be decided is whether under the law this state of facts constitutes negligence in itself for which the plaintiff may recover in this action." And the court instructed the jury to return a verdict in favor of the defendant. On appeal the supreme court says: "A nuisance has been defined as 'that which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable for him.' The evidence in this case shows that the powder magazine had been in use by the defendant company for more than thirty years, and that plaintiff has resided within about seven hundred feet of it for some sixteen years. Yet there is no testimony to show that any apprehension of danger or any fear of explosion was felt or expressed by any one during that time. No objection to the location or maintenance of the magazine has been shown. The explosives were stored in small quantities to meet current needs. Such materials are always dangerous, but as their use is essential to the work of mining, it is impossible to protect absolutely persons or property in the immediate vicinity. The risk is similar to that arising from the operation of steam-boilers and other machinery and apparatus necessary to the prosperity of great communities. Negligence in the care of the explosive or in the management

of the magazine was neither charged nor proven. The only question in the case was as to whether or not the magazine was in itself a nuisance. We can see nothing in the evidence to support such a finding. The explosives were kept only for use in the mine, and were kept in small quantities. The explosion was caused by no act of the defendant, but by a stroke of lightning. The trial court could not have sustained a verdict for the plaintiff upon the evidence. Its instructions to the jury, found in favor of the defendant, were proper, and the judgment is affirmed.'' As said in the foregoing opinion, powder, gas, steam, etc., are equally dangerous, but equally necessary in the present condition of society, and the rule laid down in the above opinion seems to be well settled, not only in Pennsylvania, but in New York and elsewhere. (12 Am. & Eng. Ency. of Law, 2d ed., p. 514; *Schmeer* v. *Syracuse Gaslight Co.,* 147 N. Y. 529.) Another case relied upon by the respondent is *Heeg* v. *Licht,* 80 N. Y. 579.[1] In a later case (*Lounsbury* v. *Foss,* 80 Hun, 296, 30 N. Y. Supp. 89), speaking of *Heeg* v. *Licht,* the court says: ''Keeping of such material does not, however, necessarily constitute a nuisance *per se;* that depends upon the locality, the quantity, and the surrounding circumstances. The consequential result of the authorities is, that each case like this must be left to the jury, under proper instructions from the court.''

It does not appear that when the defendant commenced its business it was not located in a proper place, and at that time sufficiently removed from a residence neighborhood. It was carried on with the utmost care. The damage in question resulted from a cause entirely beyond its control, and without any carelessness or negligence on its part whatever, and under the more recent and better line of authorities, as shown under such circumstances, it is not responsible.

The judgment and order are reversed.

Shaw, J., Angellotti, J., McFarland, J., and Lorigan, J., concurred.

Beatty, C. J., dissented.

Rehearing denied.

[1] 36 Am. Rep. 654.