**PECAN SHOPPE OF SPRINGFIELD, MISSOURI, INC., Plaintiff-Appellant,**

v.

**TRI-STATE MOTOR TRANSIT CO., Defendant-Respondent.**

No. 10293.

Missouri Court of Appeals, Springfield District.

Oct. 18, 1978.

Motion for Rehearing or to Transfer Denied Nov. 3, 1978.

Application to Transfer Denied Dec. 18, 1978.

**432**

Bob J. Keeter, Schroff, Keeter, Glass & Newberry, P. C., Springfield, for plaintiff-appellant.

Meredith B. Turner, Rodney E. Loomer, Turner, Reid & Duncan, Springfield, Robert G. Oberlander, Linde, Thompson, Fairchild, Langworthy & Kohn, Kansas City, for defendant-respondent.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

FLANIGAN, Judge.

Defendant Tri-State Motor Transit Co. is a motor carrier licensed by the state of Missouri and the Department of Transportation. On September 14, 1970, the union employees of Tri-State went on strike. In the early morning hours of September 30, 1970, a tractor-trailer unit, owned by Tri-State and driven by its non-striking employee John A. Galt, was transporting a load of dynamite, for shipper DuPont Company, from Joplin, Missouri, to a mining site at Boss, Missouri.

As the unit was traveling on Interstate Highway 44 in Greene County, Missouri, it approached an overpass on which stood Bobby Shuler, one of the striking employees. Using a 30–30 rifle, Shuler fired three shots at the unit, thereby causing a "tremendous" explosion which resulted in the death of Galt[1] and the destruction of the unit. The explosion caused heavy damage to nearby improved land owned by plaintiff Pecan Shoppe of Springfield, Missouri, Inc., on which it conducted a restaurant and service station business.

Plaintiff brought this action for damages against Tri-State and the union. Prior to the trial plaintiff settled its claim against the union. The amount of that settlement did not fully compensate plaintiff for its damages and the case proceeded to trial against Tri-State. The jury returned a verdict in favor of Tri-State. Plaintiff appeals.

Plaintiff's principal "point relied on" is that the trial court erred in failing to direct a verdict for plaintiff on the issue of liability. It is plaintiff's position that the doctrine of strict liability was applicable to the admitted facts and that the sole province of the jury was to determine the extent of plaintiff's uncompensated damages and to render the appropriate award.

---

1. The conviction of Shuler for the second degree murder of Galt was affirmed in *State v. Shuler*, 486 S.W.2d 505 (Mo.1972).

It is the position of Tri-State that the trial court did not err in the manner claimed because "the theory of strict liability does not apply to a common carrier engaged in transporting explosives," and further, that the cause of the explosion "was the intervening criminal act of convicted murderer Bobby Shuler."

■ Where the undisputed facts establish as a matter of law that the plaintiff is entitled to recover, the trial court may and should direct a verdict in his favor. *Rogers v. Thompson*, 364 Mo. 605, 265 S.W.2d 282, 287[1] (Mo. banc 1954); *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 88[2] (Mo.App. 1976); *Alaska Federal Savings and Loan Ass'n v. Hoffman*, 485 S.W.2d 118, 120[1] (Mo.App.1972).

Plaintiff's contention is that certain basic facts, conceded to be true by Tri-State, required the trial court to direct a verdict in plaintiff's favor. Those facts are:

1. Tri-State was operating its truck, loaded with dynamite, on the highway;

2. The dynamite exploded;

3. As a direct result of the explosion, plaintiff sustained damage for which it was not fully compensated.[2]

The facts recited above were undisputed. The parties also agree that after the commencement of the strike and prior to the explosion, various acts of violence were committed against Tri-State by "persons known and unknown."[3]

Witnesses for Tri-State testified that the nighttime movement of explosives was safer than daytime movement because of less traffic. Plaintiff, however, attempted to show that the risk of violence was lower during daytime. After the commencement of the strike Tri-State vehicles moved in convoys, usually accompanied by security guards as escorts. The FBI, the highway patrol, and local sheriffs were informed of movements of the convoys.

The unit driven by Galt was one of a two-unit convoy. Prior to its departure from Tri-State's premises at Joplin, the sheriffs of Lawrence County and Greene County were notified of the movement. This information was relayed to deputy sheriffs and other patrol officers. Several law enforcement vehicles were assigned the duty of protecting the convoy. There were six overpasses in Greene County and deputy sheriff Lindsey had checked the overpass used by Shuler a few minutes before the explosion occurred. Officer Lindsey was checking another overpass, a quarter of a mile away, when he heard the explosion.

In submitting the case to the jury the court, at the instance of the plaintiff, gave two verdict-directing instructions. Instruction No. 2, in essence, required a verdict in favor of the plaintiff if the jury found these facts: Tri-State operated a truck that carried dynamite; the dynamite exploded; "Such use by [Tri-State] of its property was unreasonable"; and plaintiff sustained damage as a result.

Instruction No. 3 required the jury to return a verdict for the plaintiff if they found that plaintiff was damaged as a result of defendant's conduct in two alternative respects and if the jury found that such conduct was negligent. The alternative grounds were: (1) Tri-State "operated its truck carrying dynamite at night when incidents of shooting were occurring at night and such truck could have been operated during the day," and (2) Tri-State "operated its truck carrying dynamite at a time when it knew that such truck might be fired upon and could cause an explosion."

Plaintiff argues that the transportation of dangerous commodities in interstate commerce by motor carrier requires a special certification by the Interstate Com-

---

2. Tri-State does not argue that plaintiff's settlement with the union fully compensated plaintiff for its damages and makes no effort to justify, on that ground, the action of the trial court in refusing to direct a verdict in plaintiff's favor.

3. Between September 15 and September 29 there were 33 separate incidents of violence; 7 involved the shooting of firearms at Tri-State vehicles; 7 involved the throwing of objects at Tri-State vehicles; 2 drivers were beaten up; 10 drivers were threatened. No explosions occurred.

merce Commission and that Tri-State, having sought that certification, exercised its free choice to transport explosives. Approximately 50 percent of Tri-State's business consists of the hauling of explosives, ammunition and nuclear waste. Accordingly, says plaintiff, Tri-State should not be entitled to avail itself of those principles which exempt a common carrier from liability for injuries caused by the explosion of commodities in its custody where there is no showing that the carrier was negligent or maintained a nuisance. Plaintiff also argues that the acts of violence which antedated the explosion made the criminal conduct of Shuler foreseeable.

Tri-State argues that plaintiff was accorded a decision on the issues of negligence and unreasonable use and that, under the instant facts, the doctrine of strict liability should not be invoked. Tri-State relies upon its status as a "common carrier by motor vehicle" as defined in 49 U.S.C.A. § 303(a)(14) and seeks to avail itself of those principles of liability which pertain to the transportation of explosives by such carriers. Tri-State points out that the Restatement of Torts, Second, Vol. 3, Chapter 21 [§§ 519–524(a)] contains certain principles concerning "abnormally dangerous activities." Section 521 is to the effect that "the rules as to strict liability for abnormally dangerous activities" do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a common carrier.[4] Tri-State advances the alternative argument that the criminal conduct of Shuler serves to exculpate it, even assuming that liability would otherwise attach.

None of the foregoing arguments totally lacks appeal. Neither side, in their respective and excellent briefs, has cited any authority which is factually similar. This case, viewed in all of its aspects, seems to

be one of first impression and the disposition of this appeal has not been free of difficulty. This court concludes that the trial court did not err in refusing to direct a verdict for the plaintiff.

Counsel have cited no Missouri cases dealing with the liability of a transporter for damages caused by the explosion of dangerous substances in its custody. Missouri courts have dealt with the liability of persons who use explosives in blasting activities and with the liability of storers of dangerous substances.

In *Summers v. Tavern Rock Sand Co.*, 315 S.W.2d 201, 203[1, 2] (Mo.1958), our supreme court said: " '[B]lasting is regarded as a work which one may lawfully do, providing he avoids injuring persons or property, and subject to his obligation to pay damages for any injury inflicted by his blasting.' . . And in this state when damage to property is by vibration or concussion from blasting there is an invasion of the premises and liability irrespective of negligence quite as if the blasting had cast rocks or debris thereon."

■ When persons or property, located in populated areas and off the premises of the storer of dangerous substances, are injured as a result of an explosion of the substances, the storer incurs liability "regardless of the question of the degree of care he exerted to prevent an explosion." *Scalpino v. Smith*, 154 Mo.App. 524, 135 S.W. 1000, 1004[5] (1911). The court there said: "The act of defendant in storing a dangerous quantity of dynamite on his premises was an invasion of the personal and property rights of his neighbors who dwelt within the range of its destructive force." Similar holdings are found in *Schnitzer v. Excelsior Powder Mfg. Co.*, 160 S.W. 282 (Mo.App. 1912); *French v. Center Creek Powder Mfg. Co.*, 173 Mo.App. 220, 158 S.W. 723 (1913); *State v. Excelsior Powder Mfg. Co.*, 259 Mo.

---

**4.** Section 522 of the Restatement of Torts, Second, provides that one carrying on an abnormally dangerous activity is subject to strict liability for the resulting harm although it is caused by three enumerated "unexpectable" sources, one of which is "innocent, negligent, or reckless conduct of a third person."

However, a "caveat" to § 522 reads: "The Institute expresses no opinion as to whether the fact that the harm is done by an act of a third person that is not only deliberate but also intended to bring about the harm, relieves from liability one who carries on an abnormally dangerous activity."

254, 169 S.W. 267 (1914); *Liggett v. Excelsior Powder Mfg. Co.*, 274 Mo. 115, 202 S.W. 372 (1918).

In *Schnitzer* the court held that the defendant was guilty of maintaining a public nuisance in storing on its premises combustible and explosive materials in such large quantities that their mere presence constituted a continuous menace to persons living in the vicinity. In *French* the court held that the storer of nitroglycerin was liable to a plaintiff whose nearby home was damaged by an explosion and that liability attached whether the substance "exploded by pure accident or by negligence." The court added: "He who made it possible for the damage to be done should bear [the] loss." The court in the earlier *Excelsior* case stated: "A powder magazine, as to all property and residents in such proximity to it that they are subject to danger from its explosion, is a nuisance regardless of the question as to negligence in the manner of keeping it." The court held that the constant danger of explosion "of itself, without an actual explosion," caused a powder magazine to be a public nuisance. In *Liggett*, which also involves the Excelsior company, the court approved the holding in the earlier *Excelsior* case.

Courts in other jurisdictions are not in agreement on the issue of whether a transporter of dangerous substances, in the absence of negligence or facts supporting a finding of nuisance, is liable for injuries caused by their explosion. Authorities denying liability in such circumstances include *Pope v. Edward M. Rude Carrier Corp.*, 138 W.Va. 218, 75 S.E.2d 584 (1953) and *Christ Church Parish v. Cadet Chem. Corp.*, 25 Conn.Sup. 191, 199 A.2d 707 (1964). The foregoing authorities represent the majority view. 31 Am.Jur.2d Explosions and Explosives § 86, p. 855; 35 C.J.S. Explosives § 9, p. 283; Restatement of Torts, Second, § 521. On the other hand, strict liability was imposed upon the carrier in *Siegler v. Kuhlman*, 81 Wash.2d 448, 502 P.2d 1181 (1972) and *Chavez v. So. Pac. Trans. Co.*, 413 F.Supp. 1203 (E.D.Cal.1976).

In *Pope*, a leading authority in the field, a shipment of dynamite was being transported on a public highway by a licensed contract carrier (Rude) on behalf of a manufacturer and shipper (DuPont). The injured plaintiff sought recovery against Rude and DuPont on two theories, the maintenance of a public nuisance and the doctrine of absolute liability. In rejecting both theories, the court emphasized the distinction between the liability of the transporter of such substances and that of a storer or a user for blasting purposes. The court said, 138 W.Va. 218, 75 S.E.2d at p. 595:

"With respect to the liability of a common carrier or other carrier who transports high explosives the rule is that in the absence of negligence on its part such carrier is not liable to third persons who are injured by an explosion which occurs during the transportation by it of such explosives but that it is liable for injuries caused by its negligence or where it has so handled a shipment that it has become a nuisance which causes injury."

The court quoted, with approval, the following language from *Actiesselskabet Ingrid v. Central Railroad Company of New Jersey*, 216 F. 72, 78 (C.A. 2 1914): "It certainly would be an extraordinary doctrine for courts of justice to promulgate to say that a common carrier is under legal obligation to transport dynamite and is an insurer against any damage which may result in the course of transportation, even though it has been guilty of no negligence which occasioned the explosion which caused the injury. It is impossible to find any adequate reason for such a principle."

In *Christ Church Parish*, defendant's tractor-trailer unit, loaded with 20 tons of chemical substances, exploded. Recognizing that Connecticut applied the doctrine of absolute liability to users of explosives for blasting purposes, the court stated 25 Conn. Sup. 191, 199 A.2d at p. 709: "The liability of the carrier should be predicated upon its knowledge of the dangerous propensities of the substance it is transporting, together with its use of a standard of care commen-

surate with the dangerous character of the substance."

On the other hand, in *Siegler,* the doctrine of strict liability was applied to render the owner of a gasoline truck liable for the death of a motorist who was killed when her automobile encountered a pool of spilled gasoline on the highway. The trailer of defendant's tractor-trailer unit separated from the tractor and overturned. The cause of the separation was unknown. The court said, 81 Wash.2d 448, 502 P.2d at p. 1184:

"Dangerous in itself, gasoline develops even greater potential for harm when carried as freight—extraordinary dangers deriving from sheer quantity, bulk and weight, which enormously multiply its hazardous properties. . . . It is quite probable that the most important ingredients of proof will be lost in a gasoline *explosion* and fire. Gasoline is always dangerous whether kept in large or small quantities because of its volatility, inflammability and explosiveness. But when several thousand gallons of it are allowed to spill across a public highway—that is, if, while in transit as freight, it is not kept impounded—the hazards to third persons are so great as to be almost beyond calculation. . . . The rule of strict liability rests not only upon the ultimate idea of rectifying a wrong and putting the burden where it should belong as a matter of abstract justice, that is, upon the one of the two innocent parties whose acts instigated or made the harm possible, but it also rests on problems of proof."

Referring to explosions of "dynamite, large quantities of gasoline, and other ex-

plosives," the court pointed out that persons harmed thereby encounter difficult problems of proof if some standard of liability, other than strict liability, is applied. The court stated that the transportation of large quantities of gasoline on the public highway was "more highly hazardous" than the storage of it in commercial quantities.[5]

In *Chavez,* 18 boxcars, loaded with bombs, exploded in a railroad yard. The boxcars and bombs were owned by the United States and were being hauled by Southern Pacific under a contract with the Navy. The cause of the explosion is not stated in the opinion. Southern Pacific sought dismissal of those claims against it which were predicated on the theory of strict liability. The court said, at p. 1208:

"Notwithstanding Southern Pacific's protestations to the contrary, one public policy now recognized in California as justifying the imposition of strict liability for the miscarriage of an ultrahazardous activity is the social and economic desirability of distributing the losses, resulting from such activity, among the general public."

The court said, at p. 1209:

"[T]he risk distribution justification for imposing strict liability is well suited to claims arising out of the conduct of ultrahazardous activity. The victims of such activity are defenseless. Due to the very nature of the activity, the losses suffered as a result of such activity are likely to be substantial—an 'overwhelming misfortune to the person injured.' . . . By indirectly imposing liability on those that benefit from the dangerous activity, risk distribution benefits the social-economic body in two ways: (1) the adverse impact of any

---

**5.** In *Siegler* the concurring opinion of Judge Rosellini espoused the risk distribution argument supported by the *Chavez* case. However, he stated that the principal opinion "should make clear . . . that the owner of the vehicle will be held strictly liable only for damages caused when the flammable or explosive substance is allowed to escape without the apparent intervention of any outside force beyond the control of the manufacturer, the owner, or the operator of the vehicle hauling it. I do not think the majority means to suggest that if another vehicle, negligently driven, collided

with the truck in question, the truck owner would be held liable for the damage. But where, as here, there was no outside force which caused the trailer to become detached from the truck, the rule of strict liability should apply."

Some courts have imposed liability upon the *storer* of dangerous substances when the explosion was caused by lightning. See *Chicago, W. & V. Coal Co. v. Glass,* 34 Ill.App. 364 (1889) and *Prussak v. Hutton,* 30 App.Div. 66, 51 N.Y.S. 761 (1898). Contra: *Tuckachinsky v. Lehigh & Co.,* 199 Pa. 515, 49 A. 308 (1901).

particular misfortune is lessened by spreading its cost over a greater population and over a larger time period, and (2) social and economic resources can be more efficiently allocated when the actual costs of goods and services (including the losses they entail) are reflected in their price to the consumer. Both of these benefits may be achieved by subjecting Southern Pacific to strict liability."

The court in *Chavez* rejected the doctrines of *Actiesselskabet Ingrid, Pope* and *Christ Church Parish,* all discussed supra, and said there was no sound basis for exempting carriers from the doctrine of strict liability. The court said at p. 1214:

"[T]here is no logical reason for creating a 'public duty' exception when the rationale for subjecting the carrier to absolute liability is the carrier's ability to distribute the loss to the public. Whether the carrier is free to reject or bound to take the explosive cargo, the plaintiffs are equally defenseless. Bound or not, Southern Pacific is in a position to pass along the loss to the public. Bound or not, the social and economic benefits which are ordinarily derived from imposing strict liability are achieved. Those which benefit from the dangerous activity bear the inherent costs. The harsh impact of inevitable disasters is softened by spreading the cost among a greater population and over a larger time period. . . ."

*Siegler* lends support to plaintiff's argument that transporting dynamite on public highways is even more dangerous than storing it and Missouri has imposed absolute liability upon storers thereof.[6] *Chavez* advances the "risk distribution" justification and challenges the majority view granting exemptions to carriers.[7] There is much to

be said in favor of these holdings but in neither *Siegler* nor *Chavez* was the court confronted with a situation involving the criminal act of a third person as the immediate cause of the explosion.

Other jurisdictions have dealt with the liability of a storer or transporter of dangerous substances where the explosion was caused by the intentional misconduct of a third person. The cases include *Kleebauer v. Western Fuse & Explosives Co.*, 138 Cal. 497, 71 P. 617 (1903); *McGehee v. Norfolk & S. Ry. Co.*, 147 N.C. 142, 60 S.E. 912 (1908); *Watson v. Kentucky and Indiana Bridge & R. Co.*, 137 Ky. 619, 126 S.W. 146 (1910); *Globe & Rutgers Fire Ins. Co. of New York v. Standard Oil Company of La.*, 158 La. 763, 104 So. 707 (1925).

In *Kleebauer* an employee of the defendant murdered a fellow employee and then ran into a powder magazine. He intentionally set fire to the magazine when officers attempted to arrest him. The court held that the defendant was not liable to the plaintiff whose nearby house was damaged. The court held that plaintiff had failed to make a showing of negligence but also held that under the facts the defendant was not guilty of maintaining a nuisance per se.

In *McGehee* the court held that a storer of dynamite was not liable to a plaintiff who was injured by an explosion which was caused by plaintiff himself engaging in shooting at the storage building. The plaintiff was a trespasser on defendant's premises. The court specifically refrained from expressing an opinion as to the liability of the defendant "for damage sustained by one who had no connection with the explosion."

---

6. It is arguable that the transportation of dynamite is even more dangerous than the transportation of gasoline. A Missouri court has said: "The mere storage of a large quantity of gasoline is not a nuisance per se; other factors must be considered." *City of Spickardsville v. Terry*, 274 S.W.2d 21, 25[3] (Mo.App.1954).

7. In *Exner v. Sherman Power Const. Co.*, 54 F.2d 510, 515 (C.A. 2 1931) absolute liability was imposed upon a storer of dynamite which exploded and injured the plaintiff who was off

the premises. In dictum, Judge Augustus Hand, speaking for the court, said: "It is argued that transportation of the dynamite through the town in small quantities would have increased the risk to the public. This seems to be true, and no reason is shown for taking such a course, because it would have added to the danger without relieving the defendant from absolute liability, had an explosion occurred while the dynamite was on the way."

In *Watson* a tank car owned by the defendant was transporting gasoline through the city of Louisville. A derailment caused the gasoline to escape and flow in large quantities on the street and into the gutters. Plaintiff was injured by an explosion produced by the act of one Duerr in throwing a lighted match into the gasoline. The court held that if the act of Duerr "was malicious and done for the purpose of causing the explosion" defendant would not be liable.

In *Globe* defendant's employee was delivering gasoline to the underground tank of a customer and negligently permitted the gasoline to overflow. Plaintiff was injured by an explosion caused by the act of a third person in throwing a lighted match into the gasoline. In holding the defendant was not liable, the court stated that the handling of gasoline cannot be accomplished without some spilling, that the defendant should not be treated as an insurer and that the public must share some part of the unavoidable risk. The court said the defendant was not *required to anticipate* "the foolhardy act of throwing a lighted match near the intake pipe of a gasoline tank at a time when gasoline was being poured into it."

In a Missouri case, *Kennedy v. Independent Quarry & Const. Co.*, 316 Mo. 782, 291 S.W. 475 (1926), an adult trespasser took a dynamite cap from a shed located on defendant's premises. Seven hours later and away from defendant's premises, the trespasser intentionally ignited the dynamite and injured the plaintiff. The court held that the trial court properly directed a verdict for the defendant. At p. 481 the court said: "Under all the circumstances shown, we conclude that the essential failure of the plaintiff's case is in the intervention, between defendant's alleged negligence and plaintiff's injury, of the acts of the [trespasser], not reasonably to be anticipated by defendant, and of a character which made the original negligent act of defendant remote, and superseded it. The act of [the trespasser] was not that of a child, or one of merely concurring negligence, but was the act of a person nearing maturity, moving independently, and conscious of wrongdoing

. . . . [T]here was an efficient intervening cause, which defendant was not bound to anticipate."

On the other hand, even if the immediate cause of plaintiff's injuries was the criminal act of a third person, defendant is not always relieved of liability. In *Gaines v. Property Servicing Co.*, 276 S.W.2d 169 (Mo. 1955), plaintiff was a tenant in an apartment building owned by the defendant. Plaintiff was injured as a result of a fire in the building. The building was not equipped with a fire escape as required by statute. The fire was lit by one Haley who was convicted of arson for setting it. The defendant asserted that he was relieved of liability by reason of Haley's intervening intentional criminal act. In holding the defendant liable, the court pointed out that he was guilty of negligence per se in failing to comply with the statute. The purpose of the statute was to furnish protection against injury from any fire, regardless of its origin. The court held it was immaterial whether the fire "had its origin in accident, act of God, negligence, or willful, intentional, and wrongful conduct." A jury was entitled to find that defendant's negligence concurred "with the intentionally set fire" to cause the injuries and the trial court did not err in denying defendant's request for a directed verdict.

The case at bar is distinguishable from *Gaines*. Plaintiff made no showing that Tri-State violated any statute or regulation dealing with the transportation of dynamite. There was nothing unlawful in Tri-State's operation of the unit which exploded.

■ In order for this court to uphold plaintiff's contention it must adopt the minority view, exemplified by *Siegler* and *Chavez*, which refuses to recognize the general rule of non-liability of common carriers for explosions occurring in the absence of negligence and elements of nuisance. Plaintiff has cited no authority to support the view that a carrier which devotes most of its business to the transportation of explosives is entitled to less favorable consid-

eration than the ordinary common carrier. In the absence of a clear legislative intent, the granting of a specific classification to a carrier should not create a liability where otherwise none exists. Further, this court would have to take the additional step, not taken by *Siegler* or *Chavez*, of invoking the doctrine of absolute liability where the undisputed evidence shows that the explosion was caused by the criminal act of a third person. This it is unwilling to do. Plaintiff's principal point has no merit.

In other assignments of error plaintiff challenges certain rulings of the trial court with regard to the admission of evidence. Those assignments have been reviewed and no prejudicial error appears. A discussion of them would serve no precedential purpose.

The judgment is affirmed.

All of the Judges concur.